IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| KEVIN WASSON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE NUMBER |
| | ) | 1:21-cv-04805 |
| ARCPE HOLDING, LLC, SERVIS | ) | |
| ONE, INC. and John Does 1-3, | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS AND IN SUPPORT OF HIS MOTION FOR LEAVE
TO AMEND COMPLAINT**

I.     **RESPONSE TO MOTION TO DISMISS.**

a.  **Allegations in Wasson's Complaint.**

i.  <u>Allegations germane to Defendants' negligence and</u>

<u>interference with the sale of Wasson's home.</u>

This is an action between a homeowner (Wasson), his successor-in-interest

mortgagee (ARCPE Holding), and its servicing company (Servis One *d/b/a* BSI

Financial Services).  Complaint, ⁋⁋ 9, 12, and 13.

On May 25, 2021, Wasson entered into a Purchase and Sale Agreement with

a third-party to sell his property.  *Id.* at ⁋ 15.  In order to proceed to closing, the

1

closing attorney had to ascertain the exact payoff amount for all mortgages on the property. *Id.* at ¶ 16.  Accordingly, Wasson contacted Servis One to obtain a direct line of communication with ARCPE to obtain the loan payoff amount. *Id.* at ¶ 17. Wasson was denied the right to speak with ARCPE, and instead was told by a Servis One representative that he was "not [to] communicate with ARCPE." *Id.* at ¶ 18.  Instead, all communications concerning the loan were to be directed to Servis One. *Id.*

Complying with Servis One's directive, Wasson instructed the closing attorney to contact Servis One to obtain the payoff amount for ARCPE's mortgage. *Id.* at 19.  The closing attorney contacted Servis One to obtain the loan payoff information. *Id.* at 20.  However, Servis One never provided the payoff amount. *Id.*

Instead of providing the payoff amount, Servis One, acting within the scope of its agency with ARCPE (*see id.* ¶ 24), told the closing attorney at least four (4) untruths: 1) that the payoff amount had already been sent via email, 2) the payoff amount had already been sent via facsimile, 3) no documents could be provided to the closing attorney, and 4) the request for payoff amount was rejected because "it was not hand written by the customer." *Id.* at ¶¶ 20, 21.  The assertions that the

closing attorney had been given the loan payoff amount was false, as Servis One "never provided the payoff amount." *Id.* at ¶ 20.

As a result of Servis One's failure to provide the necessary payoff information, the sale was never able to close and the purchasers terminated the contract. *Id.* at ¶¶ 22, 23. This in turn caused Wasson to be damaged in an amount of the contract price of $282,000.00. *Id.* at ¶¶ 23, 29.

> ii.   Allegations germane to ARCPE's breach of contract.

On December 12, 2018, ARCPE sent a letter to Wasson offering to settle the loan for a lump sum payment of $20,000.00. *Id.* at ¶ 39. Wasson accepted the offer on December 17, 2018. *Id.* at 40.

Thereafter, to formally memorialize the agreement, Wasson hired an attorney to prepare a Release. *Id.* at 41. Wasson signed the Release, and forwarded it to ARCPE for execution. *Id.* Instead of complying with the agreement, ARCPE, through a Mr. Barry Brecher, refused to release the debt and reneged on the agreement. *Id.* at ¶¶ 43, 46, and 47.

**b.  Argument and Citation of Authority.**

> i.   Standard of Review.

As this Court has previously noted:

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for

relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); Fed.R.Civ.P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citations and quotations omitted). In ruling on a motion to dismiss, the court must accept factual allegations as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082, 106 S.Ct. 851, 88 L.Ed.2d 892 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (citing *Twombly*, 550 U.S. at 555).

*Econ-O-Check Corp. v. Strategycorps*, No. 1:19-cv-3742, 2020 U.S. Dist. LEXIS 256375, at *4 (N.D. Ga. Mar. 23, 2020).

As discussed below, taking the allegations in Wasson's Complaint as true, it is clear that Wasson's Complaint plausibly states claims for tortious interference, breach of contract, and negligence against Defendants. Accordingly, the Court should deny Defendants' Motion to Dismiss.

ii.   <u>Wasson's Complaint states a plausible claim for tortious</u>

<u>interference with contractual relationship.</u>

Tortious interference with contract requires proof of four (4) elements: that

the defendant acted improperly and without privilege, that he acted purposely and

with malice with the intent to injure, that the defendant's conduct caused a third

party to discontinue or fail to consummate a contractual obligation, and that the

conduct resulted in damage to the plaintiff.  *See Strategycorps*, at \*10.

Defendants assert four (4) reasons why the tortious interference claim should

be dismissed: 1) "there was no wrongful conduct", 2) "ARCPE was not a stranger

to the contract," 3) Wasson "failed to plead facts showing the requisite intent," and

4) Wasson "failed to show damages."  Each of these arguments fail.

1.   *Defendants acted improperly.*

"Improper conduct" in a tortious interference claim usually means a

defendant employed predatory tactics, including making false or misleading

representations.  *Id.*

The face of Wasson's Complaint demonstrates that Servis One made false

representations to the closing attorney concerning the loan payoff amount.

Specifically, Servis One represented at least twice that the loan payoff amount had

been delivered.  *See* Complaint, ℙ 21.  That is objectively false.  *See Id.* at ℙ 34

5

("BSI failed to provide the loan payoff information."). Despite this fact, and despite the closing attorney's multiple requests, Servis One repeatedly refused to provide the loan payoff amount. *Id.* at ¶¶ 20, 21, and 26. Further, the assertions that "no documents could be provided to the closing attorney" and that the request for the loan payoff amount had to be "hand written by the customer" are patently absurd. Because the closing attorney could not obtain the loan payoff amount, the sale could not close and ultimately the buyers terminated the contract. *Id.*, ¶¶ 20, 22, 23, 26, and 29.

Given the parties' history, this is the sort of conduct which can rise to the level of predatory tactics based off fraud or misrepresentations. As discussed below, Servis One knew that Wasson had a contract to sell his home. It also had to have known that it was in a unique position to provide the exact loan payoff information needed to proceed to closing. Nevertheless, it made false and incredible statements concerning the payoff, which led to Wasson losing the contract.

Further, because Servis One was acting at all times as ARCPE's agent, its conduct is imputed upon its principle. Accordingly, Wasson has asserted facts which plausibly state a claim for tortious interference against both Defendants.

### 2.  *Defendants were strangers to the contract.*

A person is a stranger to a contract if he derives no *direct* economic benefit from it.  The word "direct"—which exists consistently in the case law when defining a "stranger"—is important.  Neither ARCPE nor Servis One would have received a direct benefit from the consummation of the contract.  Accordingly, they are both strangers.

Based off the facts as pled, the only person to receive a direct benefit under the Purchase and Sale Agreement was Wasson, as he was to be paid the purchase price under the contract.  Beyond this, ARCPE would merely receive the benefit of having its loan satisfied sooner rather than later.  Its loan would have been paid off from the proceeds in the exact same sum as it would have over the course of an amortization schedule.  Its economic position with respect to Wasson would not materially change if the loan was paid off early, as it maintained security on its loan and future rights to regular payments.  In other words, ARCPE's net economic benefit with respect to Wasson's loan would remain the same, regardless of whether the sale closed or not.  At most, it would receive an *indirect* benefit by receiving an early payoff, which is insufficient to render the stranger doctrine applicable.

Servis One is even farther removed from receiving a benefit, a fact which Defendants' Brief seems to concede.  There was no contractual privity between Wasson and Servis One, and nothing to suggest that Servis One would receive anything at all from the sale of the property.  It did not hold any security relative to the loan, did not actually receive any payments, and would not have received a penny from the loan being paid off.  Accordingly, Servis One was absolutely a stranger to the Purchase and Sale Agreement.

   3.  *The Complaint shows Defendants acted with specific*

   *intent.*

Servis One, and by extension ARCPE, had actual or at least constructive knowledge that Wasson was under contract to sell his property.  Wasson contacted Servis One requesting to speak with ARCPE concerning the loan payoff amount. Complaint, ℙℙ 16 – 18.  Later, the closing attorney "repeatedly" contacted Servis One concerning the loan payoff amount so that the sale could close.  *Id.*, ℙ 20, 21. It is incredible to assert that when someone who deals with residential loans is contacted by a closing attorney that he or she is not on at least constructive notice that the property is under contract.

Servis One then engaged in numerous communications with the closing attorney, making materially false statements concerning the payoff amount and ultimately refusing to provide it.  Complaint, ¶ 21.

Of course, intent can be inferred by circumstantial evidence and a defendant's conduct.  *See S. Bus. Machs. v. Norwest Fin. Leasing*, 194 Ga. App. 253, 259 (1990).  Given that Servis One knew or should have known the property was under contract, and given that it made a serious of false and absurd statements to the closing attorney about the payoff amount, Servis One's malicious intent can certainly be inferred.

4.  *Wasson has clearly been damaged as a result of Defendants' conduct.*

Defendants' argument regarding Wasson's damages also falls short in that it assumes his damages equal his equity in the house.  That is inaccurate.  The fact that Wasson would be able to pay off his obligation would serve as a huge financial benefit to him, and would result in Wasson being unburdened of a significant amount of debt.  Now, because of Defendants' actions, he still bears that burden.  As a result, he has been damaged in the amount of the sale price set forth in the Purchase and Sale Agreement – the benefit of his bargain.

      iii.   <u>Wasson's Complaint states a plausible claim for breach of</u>

<u>contract.</u>

Georgia law specifically contemplates that an agreement to satisfy an

existing debt with a lesser sum can serve as a valid, binding, and enforceable

contract.  *See generally* O.C.G.A. § 13-4-103(a).  To this end, ARCPE's

agreement to accept $20,000 in satisfaction of its loan amounts to a

settlement of a larger debt.

In Georgia, "the law favors compromise, and when parties have

entered into a definite, certain, and unambiguous agreement to settle, it

should be enforced."  *Johnson v. DeKalb Cty.*, 314 Ga. App. 790, 793

(2012) (internal quotations omitted); *see also Kothari v. Tessfaye*, 318 Ga.

App. 289, 289 (2012):

> "[I]t is the paramount public policy of this State that courts will not
> lightly interfere with the freedom of parties to contract on any subject
> matter, on any terms, unless prohibited by statute or public policy, and
> injury to the public interest clearly appears." (Footnote omitted.) *Bryan
> v. MBC Partners*, 246 Ga. App. 549, 552 (3) (541 SE2d 124) (2000). In
> fact, "settlement agreements are highly favored under the law and will
> be upheld whenever possible as a means of resolving uncertainties and
> preventing [or settling] lawsuits." (Citation omitted.) *Schafer
> Properties v. Tara State Bank*, 220 Ga. App. 378, 380-381 (1) (469
> SE2d 743) (1996). See also *Bradley v. Bradley*, 225 Ga. App. 530, 533
> (484 SE2d 280) (1997) ("A contract of compromise is binding on the
> parties, and neither party to a compromise has power to disregard it if
> it was full and final between them.") (citation and punctuation omitted).

While settlements are preferably memorialized in formal writings, the law is very clear that letters or documents, such as those typically prepared by attorneys in negotiations, "which memorialize the terms of the agreement reached will suffice." *Brumbelow v. N. Propane Gas Co.*, 251 Ga. 674, 676 (1983). "An offer may be accepted . . . either by a promise to do the thing contemplated therein, or by the actual doing of the thing." *Herring v. Dunning*, 213 Ga. App. 695, 699 (1994).

The face of Wasson's Complaint establishes the requisite elements of a contract to settle the debt. ARCPE offered to settle a $43,937.00 debt for $20,000. Complaint, ¶ 39. Wasson accepted the offer on December 17, 2018. Complaint, ¶ 40. The consideration was payment in an immediate lump sum payment rather than installment payments over time. Complaint, ¶ 39. Thus, a contract was formed and ARCPE is bound.

An almost identical situation was considered by the Georgia Supreme Court in *Codner v. Siegel*, 246 Ga. 368 (1980). In *Codner*, the plaintiff asserted that its creditor had agreed to settle a debt for a lesser sum. Specifically:

> Siegel contends that on June 8, Codner orally agreed to accept $ 18,000 as full payment of a debt of more than $ 31,000 provided payment was made within 60 days. He contends that on June 12, Codner made the same agreement in writing only he added the requirement that Siegel either obtain Codner's release from a first mortgage or agree to indemnify him on the mortgage. Siegel contends that he partially performed the agreement of June 12th by arranging, before Codner withdrew his offer, for Codner to be released from the first mortgage.

11

*Id.* at 368-69.

The Supreme Court reasoned that a central issue in the case was whether the agreement to accept a lesser sum was supported by new consideration. *See* O.C.G.A. § 13-4-103(a).  Analyzing this, the Supreme Court stated that "[t]he execution of a new agreement may itself amount to a satisfaction if the new promise is founded on a new consideration." *Id.* at 369.  Elaborating further, and critically to this case, the Court stated that "[a] new consideration, although slight, will be sufficient to support the new agreement.  **A promise to pay a debt before it is due in a smaller sum than owed can be the necessary additional consideration**." *Id.* (emphasis added).

Here, Wasson agreed to pay a lesser sum before it was due—i.e. $20,000 in a lump sum, rather than continued amortized payments.  According to *Codner*, this is sufficient consideration to require ARCPE to accept less than the full debt and create a binding contract.

Given this, Wasson's Complaint alleges the existence of a valid contract to settle the debt for $20,000, which ARCPE clearly breached.  Therefore, ARCPE's Motion to Dismiss should be denied.

iv.   <u>Wasson's Complaint plausibly states a claim for negligence.</u>

Defendants rely upon *Bennett v. Ocwen Loan Servicing*, 2014 U.S. Dist. LEXIS 201872 (N. D. Ga. May 13, 2014) to support their argument that Wasson's negligence claim fails.

*Bennett* stands for the proposition that a loan servicer's duties are based off the terms of the underlying note and security deed.  In fact, the District Court in *Bennett* specifically posited that the basis for this rule of law lays in the concept that "negligent breach of contract" is never a viable claim absent an independent duty outside the four corners of the documents.  *See id.* at \*15 ("To establish a negligence claim for breach of a contractual duty, a plaintiff must show that, in addition to breaching the contract, the defendant breached an independent duty imposed by law.").  Thus, if a plaintiff can point to an independent duty outside these loan documents, that duty can serve as a basis for a negligence claim.

Here, Wasson has an absolute right to dispose of his property as fee simple owner, subject to all liens and mortgages of record.  O.C.G.A. § 44-6-20.  Even if subject to a mortgage, his "property may be sold."  O.C.G.A. § 44-14-44. Therefore, Defendants may not interfere with Wasson's property rights, including the right to sell to a bona fide third-party purchaser.  Nevertheless, they clearly did by failing to provide the loan payoff information and torpedoing the closing.

Wasson alleges, at least in substance, that Servis One had a duty to not interfere with the closing of the sale of the property when it was in a unique position to provide the required information to close. Complaint, ¶¶ 31-35. In response to Defendants' arguments, Wasson asserts that this duty does not fall within the gambit of "loan servicing," as there is nothing in the Complaint to suggest that the act of providing loan payoff information is expressly contemplated in the loan documents. Therefore, the Court may find that a duty exists independently as a matter of law.

In light of this, Wasson's Complaint plausibly asserts the existence of an independent duty which may serve as the basis for his negligence claim.

> v. Wasson's claim for attorneys' fees and expenses of litigation should stand if the other claims are allowed to proceed.

Awards of attorney fees are derivative of underlying claims, and accordingly Wasson's right to recover these damages turns on his ability to recover on his other substantive claims. *Stephen A. Wheat Tr. v. Sparks*, 325 Ga. App. 673, 682 (2014) ("An award of attorney fees, costs, or punitive damages is derivative of a plaintiff's substantive claims."). Therefore, if Wasson's substantive claims survive Defendants' Motion to Dismiss, his claim for attorneys' fees must also survive.

## II.   <u>MOTION FOR LEAVE TO AMEND COMPLAINT.</u>

The foregoing argument and citation of authority supports Wasson's position that his Complaint sufficiently states plausible claims against the Defendants.  In the event the Court disagrees, however, then in the alternative Wasson seeks leave pursuant to Fed. R. Civ. P. 15(a)(2) to amend his Complaint to clarify or further expound upon all of his claims.

It is worth noting that the "Court should freely give leave when justice so requires." *Id.*  The 11th Circuit has long held that "where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (quoting *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991)).  The only circumstances under which the District Court should not allow an amendment are if 1) a plaintiff has shown "undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed," 2) where the defendant would suffer "undue prejudice," or 3) where the "amendment would be futile." *Id.*  None of these factors exist here.

For sake of judicial economy and expediency, Wasson asserts that additional details concerning i) Defendants' tortious conduct and the reasons behind their

failure to provide the loan payoff amount, ii) the factual background behind the

acceptance of $20,000 to satisfy the debt, and iii) the basis for Defendants'

independent duty to provide the payoff information to the closing attorney, are

better suited for analysis in discovery followed by dispositive motions for

summary judgment.  Defendants are clearly on notice of Wasson's claims.

However, if the Court is so inclined, Wasson is prepared to supplement his

pleading to include as much information as he currently has available relating to

these issues.  In such event, Wasson requests the Court grant him leave to file an

Amended Complaint further elaborating upon his claims against Defendants.

Additionally, by not providing the loan payoff amount, ARCPE essentially

is prohibiting Wasson from obtaining funding to payoff the loan early.  At the very

least, this conflicts with the essence of the mortgage documents and is indicative

ARCPE's failure to perform its contractual obligations in good faith.

Therefore, to the extent ARCPE is subject to an implied duty imposed by the

relevant loan documents to allow Wasson to payoff his loan early, Wasson shows

that this would give rise to a breach of contract claim in addition to, or possibly in

lieu of, his negligence claim.

Accordingly, Wasson should also be allowed to amend his Complaint to plead an additional breach of contract claim in the alternative to, or in lieu of, his negligence claim.

## III.  CONCLUSION.

**WHEREFORE,** in light of the foregoing arguments and citation of authority, Wasson respectfully requests the Court deny Defendants' Motion to Dismiss, or in the alternative, grant him leave to file an Amended Complaint in accordance with Fed. R. Civ. P. 15.

This 7th day of January, 2022.

**KING, YAKLIN & WIKLINS, LLP**

/s/ Collin D. Hatcher
Collin D. Hatcher
Georgia Bar No: 926248
*Attorney for Plaintiff*

192 Anderson Street
Suite 125
Marietta, Georgia 30060
(770) 424-9235 (telephone)
(770) 424-9239 (facsimile)
chatcher@kingyaklin.com

## FONT CERTIFICATION

The undersigned counsel hereby certifies that the within and foregoing was

prepared using Times New Roman, 14-point font in accordance with LR 5.1(B).

This 7th day of January, 2022.

**KING, YAKLIN & WIKLINS, LLP**


/s/ Collin D. Hatcher
Collin D. Hatcher
Georgia Bar No: 926248
*Attorney for Plaintiff*

192 Anderson Street
Suite 125
Marietta, Georgia 30060
(770) 424-9235 (telephone)
(770) 424-9239 (facsimile)
chatcher@kingyaklin.com

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day filed the within and foregoing via CM/ECF, which will electronically serve notice on all parties.

This 7th day of January, 2022.

KING, YAKLIN & WIKLINS, LLP

/s/ Collin D. Hatcher
Collin D. Hatcher
Georgia Bar No: 926248
*Attorney for Plaintiff*

192 Anderson Street
Suite 125
Marietta, Georgia 30060
(770) 424-9235 (telephone)
(770) 424-9239 (facsimile)
chatcher@kingyaklin.com