IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KEVIN WASSON,<br><br>    Plaintiff,<br><br>v.<br><br>ARCPE HOLDING, LLC, SERVIS ONE, INC. d/b/a BSI FINANCIAL SERVICES, and John Does 1-3,<br><br>    Defendants. | Case No. 1:21-cv-04805-TWT |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO THEIR MOTION TO DISMISS**

COME NOW, ARCPE Holding, LLC ("ARCPE") and Servis One, Inc. d/b/a BSI Financial Services ("BSI") (ARCPE and BSI are sometimes referred to collectively as "Defendants"), and file this Reply to the Plaintiff's Response [Doc. 12] to their Motion to Dismiss [Doc. 3], respectfully showing this Honorable Court as follows:

1

## ARGUMENT AND CITATION OF AUTHORITY

**A. THE PLAINTIFF HAS FAILED TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT**

The Defendants moved to dismiss Count I of the Complaint for tortious interference with contract. Four specific arguments were raised in favor of dismissal – (1) there was no "wrongful conduct" as required to state a claim; (2) Defendants were not strangers to the contract; (3) the Plaintiff failed to plead facts showing the requisite intent; and (4) the Plaintiff failed to show damages. The Plaintiff's response to each argument will be addressed in turn.

*1. The Plaintiff failed to show any "wrongful conduct"*

As the Defendants noted in their initial brief, a plaintiff cannot state a claim for tortious interference with contract unless they at least show "improper action or wrongful conduct" and that this "generally involves predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions." *Kirkland v. Tamplin*, 645 S.E.2d 653, 656 (Ga. Ct. App. 2007) (citations omitted). In other words, "such wrongful conduct must amount to a crime or an independent tort . . . ." *Smith v. Meridian Techs., Inc.*, 86 A.D.3d 557, 560, 927 N.Y.S.2d 141, 144

(2011) (citation omitted).[1] The Defendants argued that the allegation here – failing to provide loan payoff information – clearly does not rise to this level.

In response, the Plaintiff says that "[g]iven the parties' history, this is the sort of conduct which can rise to the level of predatory tactics based off fraud or misrepresentations." To begin with, the "the parties' history" is not relevant, not to mention there are no allegations regarding "the parties' history" except for a one-month period in 2018. The only relevant allegation is that BSI supposedly did not give the Plaintiff's closing attorney a payoff statement in 2021, and in connection with that alleged failure, it told the closing attorney incorrectly that a payoff statement had been delivered, refused to provide the payoff amount, said that no statements could be given to the closing attorney, and asked for a handwritten request from the Plaintiff to provide the payoff. This does not give rise to "fraud or misrepresentation" that could be actionable as a tort.

A linchpin of a fraud or misrepresentation claim is detrimental reliance. *See Brady v. Dandridge*, 379 S.E.2d 543, 545 (Ga. Ct. App. 1989) (negligent misrepresentation); *Int'l. Indem. Co. v. Terrell*, 344 S.E.2d 239 (Ga. Ct. App.

---

[1] New York has the exact same requirement as Georgia of wrongful conduct in claims for tortious interference with contract. *Compare id. with Kirkland*, 645 S.E.2d at 656. In *Smith*, the New York court set forth the same language as in *Kirkland*, noting that "such wrongful conduct . . . may consist of 'physical violence, fraud or misrepresentation, civil suits and criminal prosecutions.'" 86 A.D.3d at 560 (citation omitted).

1986) (citations omitted) (fraud). The Complaint here contains absolutely no allegations of detrimental reliance on any alleged misrepresentations by BSI. Moreover, since the Plaintiff now asserts that this claim is based on fraud or misrepresentation, Rule 9(b) comes into play, which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[2]

> Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, ... (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (citing *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1371 (11th Cir. 1997)).

Here, the Complaint contains no specific allegations regarding the alleged misrepresentations. The extent of the allegations is that:

> Instead of providing the loan payoff information, BSI told the closing attorney that i) the payoff amount had been sent via email, ii) the payoff amount had been faxed, iii) no documents could be provided to the closing attorney, and iv) the request for payoff amount was rejected because "it was not hand written by the customer."

---

[2] The Defendants recognize that this argument was not raised in their initial brief. However, the Complaint gave no indication whatsoever that the Plaintiff was intending to ground Count I in fraud or misrepresentation, and it was only argued in the Plaintiff's response brief.

4

[Doc. 1-1] at p. 4, ¶ 21.

This one sentence does not say when each statement was made, how it was made, who made it, in what manner it was made, "the manner in which they misled the plaintiff," or "what the defendants obtained as a consequence of the fraud." Since the Plaintiff utterly failed to comply with Rule 9(b) and failed to show any detrimental reliance, he has failed to state a claim for tortious interference with contract based on fraud or misrepresentation.

   2.  *ARCPE was acting with privilege*

Next, it was argued that "ARCPE would clearly benefit from the purchase and sale agreement being consummated, as the proceeds of the sale would presumably have satisfied its loan in full" and therefore it was not a "stranger to the contract." [Doc. 3-1] at p. 6. Under Georgia law, one cannot be liable for tortious interference with contract unless they were a stranger to the contract. "Those who have a direct economic interest in or would benefit from a contract with which they are alleged to have interfered (even though not intended third-party beneficiaries of the contract) are not strangers to the contract and cannot have tortiously interfered." *Mabra v. SF, Inc.*, 316 Ga. App. 62, 65, 728 S.E.2d 737, 740 (2012).

In his response brief, the Plaintiff first claims – without any citation to authority – that "[a] person is a stranger to a contract if he derives no *direct* benefit from it" and that "[t]he word 'direct' – which exists consistently in the case law when defining a 'stranger' – is important." [Doc. 12] at p. 7. He then says that neither Defendant stood to directly benefit from the contract. Before going any further, though, it must be noted that the Plaintiff made arguments about how both ARCPE and BSI were strangers. However, this Court's focus is solely on whether ARCPE is a stranger, since it is alleged that BSI was acting as the agent of ARCPE and its "actions were carried out within the scope of the agency relationship", [Doc. 1-1] at p. 5, ¶ 27. *See Atlanta Mkt. Ctr. Mgmt., Co. v. McLane*, 503 S.E.2d 278, 282-83 (Ga. 1998) (collecting cases) (agents of non-strangers to a contract are also not strangers); *Harrick v. Nat'l Collegiate Athletic Ass'n*, 454 F. Supp. 2d 1255, 1260 (N.D. Ga. 2006) (citing *McLane*, 503 S.E.2d at 282). Thus, if ARCPE is not a stranger to the contract, then neither is BSI as a matter of law. *Id.*

Now that it has been clarified that the privilege analysis is applied only with respect to ARCPE, the Plaintiff's statement regarding a direct benefit does not say what the Plaintiff claims. Rather, the case law says one is not a stranger if they would derive a "direct economic interest <u>**or**</u> would benefit from [the] contract . . . ." *Mabra*, 316 Ga. App. at 65 (emphasis added). "Direct" modifies "economic," not

6

"benefit." Thus, it follows that the range of entities or people who are not strangers is far broader than the Plaintiff suggests.

In *Brooks v. Branch Banking and Trust Co.*, 107 F. Supp. 3d 1290 (N.D. Ga. 2015), the plaintiff had a mortgage loan with Branch Banking and Trust Company that encumbered rental property. *Id.* at 1294. The plaintiff fell behind on her payments and the bank refused to negotiate a modification. *Id.* While the plaintiff was trying to work out a resolution, she alleged that

> Defendant or its agents and contractors "intentionally harassed and interfered with Plaintiff's tenants by: [a]dvising them not to pay rent to Plaintiff because they would be evicted; [i]nvading their privacy by visiting and photographing the property; *and,* [h]arassing them with attempted visits to the Property." *Id.* (emphasis in original). Defendant disclosed "Plaintiff's banking status with her tenants and improperly represented her default (or alleged default) as well as her efforts to keep the mortgage current."

*Id.*

One of the claims asserted in the case was for tortious interference with contract. *Id.* at 1300. In analyzing the claim, this Court noted that the security deed between the parties contained an assignment of rents. *Id.* at 1301. Because of this, this Court concluded that Branch Banking and Trust was not a stranger to the lease agreements between the Plaintiff and her tenants. *Id.*

Here, the facts are analogous. Just as in *Brooks*, ARCPE was not a party to the contract at issue – a purchase and sale agreement between the Plaintiff and a

7

third party. However, if that sale closed, then ARCPE would have benefitted by being paid the full amount of its loan from the sale proceeds, just as performance of the lease agreements in *Brooks* would have enabled the bank to obtain the rent money. The Plaintiff here argued that this does not make ARCPE a beneficiary of the contract because "[i]ts economic position with respect to Wasson would not materially change if the loan was paid off early, as it maintained security on its loan and future rights to regular payment." [Doc. 12] at p. 7. But the same can be said of the bank in *Brooks* since it too "maintained security on its loan and future rights to regular payment." It is simply not true that a right to immediate payment is not a "benefit," especially when property values can fluctuate, borrowers can default on payments, and file bankruptcy. Full repayment of debt is never guaranteed. ARCPE clearly would have received a benefit – and arguably a direct economic one – from consummation of the purchase and sale agreement and therefore was not a stranger to the contract.

   3. *The Plaintiff failed to plead the requisite intent*

Next, the Plaintiff responded to the Defendants' argument that he failed to plead the requisite element that "the defendant acted purposely and with malice with the intent to injure." *See* [Doc. 3-1] at pp. 6-7. The Plaintiff argues that the

8

allegations in the Complaint show at least an inference of malicious intent. *See* [Doc. 12] at pp. 8-9. This is not so.

Under Georgia law, this element of the cause of action is present only "when he 'desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action.'" *Robin v. Bellsouth Advertising & Pub. Co.*, 471 S.E.2d 294, 296 (Ga. Ct. App. 1996) (quoting Restatement 2d of Torts, § 766B). The Plaintiff argues only that the facts show that BSI "knew or *should have known*" that the property was under contract. [Doc. 12] at pp. 8-9. But that does not matter. The standard clearly requires not only *actual* knowledge – as opposed to constructive knowledge – but actual knowledge that its actions would result in interference with that contract. *See Robin*, 417 S.E.2d at 296. Knowledge of the underlying contract is not enough. There is nothing in the Complaint whereby such an inference could be drawn, nor did the Plaintiff point to anything. He has failed to state a claim for tortious interference with contract.

    4.  *The Plaintiff has failed to prove damages*

Lastly, the Defendants argued that the Plaintiff failed to plead facts showing he was damaged by any tortious interference. *See* [Doc. 3-1] at p. 7. In the Complaint, the Plaintiff alleged that he was damaged to the tune of $282,000.00, which was the contract price. *See* [Doc. 1-1] at p. 5, ¶ 29. The Defendants argued

that this was implausible because the Plaintiff never stood to benefit this amount since he had to satisfy at least one mortgage loan on the property, and that there are no facts pleaded showing that the sales price was even sufficient to satisfy those loans. *See* [Doc. 3-1] at p. 7.

In response, the Plaintiff says that this argument is "inaccurate" because "Defendants' argument regarding Wasson's damages . . . falls short in that it assumes his damages equal his equity in the house." [Doc. 12] at p. 9. The Defendants' argument "assumes" this because the Complaint contains no allegations otherwise. The Plaintiff's argument in his response seems to be that he can recover $282,000.00 in damages, retain the property, and then sell it later. This would give him a tremendous, improper windfall of $282,000.00 plus the subsequent sales price, minus the loan payoffs. The Plaintiff is only entitled to recover damages that were proximately caused by the tortious conduct, *Rowell v. Phoebe Putney Mem'l Hosp., Inc.*, 791 S.E.2d 183, 185 (Ga. Ct. App. 2016) (citation omitted), and windfall damages are clearly not part of that calculation. The Plaintiff has failed to plead any facts showing how he was proximately damaged – especially because he still owns the subject property – and thus has failed to state a claim.

### B.  THE PLAINTIFF HAS FAILED TO STATE A CLAIM FOR BREACH OF CONTRACT

Next, the Plaintiff responded to ARCPE's arguments that he failed to state a claim for breach of contract. The breach of contract claim is based on the allegations that the Plaintiff supposedly entered into a contract with ARCPE in 2018 to settle his $43,937.00 debt for $20,000.00, and that ARCPE refused to accept this payment as full satisfaction, despite the fact that the Plaintiff never made or attempted to make the payment. *See* [Doc. 1-1] at 38-47. ARCPE argued that the claim fails because there was no consideration, and even if there was, the allegations only show a unilateral offer by ARCPE without acceptance by the Plaintiff.

ARCPE's first argument in favor of dismissal was that the Plaintiff was already obligated to pay the debt, and that the "payment of a debt that [the plaintiff] already owed [is] not" adequate consideration for a contract. *Citizens Trust Bank v. White*, 618 S.E.2d 9, 11-12 (Ga. Ct. App. 2005) (citations omitted). In response, the Plaintiff contends that in *Codner v. Siegel*, 271 S.E.2d 465 (Ga. 1980), the Georgia Supreme Court held that "[a] promise to pay a debt before it is due in a smaller sum than owed can be the necessary additional consideration." [Doc. 12] at p. 12 (quoting *Codner*, 271 S.E.2d at 466). The problem with reliance on *Corner*, though, is that it states that "[t]he *execution* of a new agreement may

11

itself amount to a satisfaction if the new promise is founded on a new consideration." 271 S.E.2d at 466 (emphasis added). In the instant case, there was no execution of a new agreement, *see* [Doc. 1-1] at p. 7, ¶ 46, and *Codner* makes clear that "[a]n agreement to accept an early payment without a corresponding promise to pay would merely be a unilateral agreement, and without more lacking in consideration." *Id.* at 466 n.1.

This point leads directly into ARCPE's second argument, which was that the offer from ARCPE was a unilateral one that could have only been accepted by the Plaintiff's performance. "A unilateral contract is an offer in writing which makes promises in consideration for acts of performance which are not only the acceptance, but also the consideration flowing to the party making the offer in writing." *Cardin v. Outdoor East*, 481 S.E.2d 872, 873 (Ga. Ct. App. 1997) (collecting cases). In his response, the Plaintiff essentially admitted that it was a unilateral contract by stating that "[t]he consideration was payment in an immediate lump sum rather than installment payments over time." [Doc. 12] at p. 11. The Plaintiff, however, never made the payment by the due date of December 27, 2018, or at any time. *See* [Doc. 1-1] at ¶¶ 44-47. Thus, there was no

consideration exchanged, no acceptance, and no contract.³ The breach of contract claim must be dismissed.

## C. THE PLAINTIFF FAILED TO STATE A CLAIM FOR NEGLIGENCE

The Defendants sought dismissal of the Plaintiff's negligence claim on the basis that they did not owe him any duty.

> Georgia law is . . . clear that a loan servicer does not owe a duty to borrowers. In a case regarding a bank's administration of a loan, the Georgia Court of Appeals explained that "[w]hile evidence existed that the bank may have been negligent in managing and monitoring the loan, any duty the bank owed [the plaintiff] in connection with the loan arose solely out of the parties' contractual relationship' and was not based on a theory of negligence.

*Love v. Pennsylvania Higher Educ. Assistance Agency*, No. 1:19-CV-02387-JPB, 2020 WL 1545798, at *6 (N.D. Ga. Mar. 16, 2020) (quoting *Fielbon Dev. Co., LLC v. Colony Bank of Houston Cty.*, 660 S.E.2d 801-09 (Ga. Ct. App. 2008)) (citations omitted).

In response, the Plaintiff admitted that in order to survive the motion to dismiss, he must "point to an independent duty outside these loan documents . . . ." [Doc. 12] at p. 13; *see also Bennett v. Ocwen Loan Servicing, LLC*, No. 2:13-CV-00243-WCO-JCF, 2014 WL 12860644, at *6 (N.D. Ga. May 13, 2014), *report and*

---

³ The Plaintiff's contention that a contract was formed which would allow him to satisfy the loan for $20,000.00 is rendered even more implausible by his tortious interference claim. If the Plaintiff is so adamant that the payoff amount was $20,000.00 based on the alleged contract formed in 2018, then there would be no need for him to press BSI for a payoff statement and he would have tried to pay $20,000.00 to satisfy the loan upon a sale of the property.

*recommendation adopted*, No. 2:13-CV-243-WCO-JCF, 2014 WL 12861144 (N.D. Ga. Aug. 12, 2014) (citation omitted). However, the Plaintiff utterly failed to show that any such independent duty existed. His response cites to no law except for two statutes – O.C.G.A. § 44-6-20 and O.C.G.A. § 44-14-44. However, the former is a definitional statute about what a "fee simple estate" is and confers no substantive rights, and the later is a statute regarding the foreclosure of a mortgage lien, which is irrelevant here.

The Plaintiff somehow concludes that these two statutes, taken together, mean that there was a duty "not [to] interfere with Wasson's property rights, including the right to sell to a bona fide third-party purchaser." [Doc. 12] at p. 13. This is a fanciful statement of the Plaintiff's own making, devoid of any legal support. He cannot make up duties out of thin air. The fact is that the Defendants did not owe the Plaintiff any duties outside of the loan documents, and Georgia law is uniform in this respect. He has failed to state a claim for negligence and the claim should be dismissed.[4]

---

[4] The Plaintiff failed to respond to the Defendants' argument that he failed to plead that he was damaged by any negligence, which is a separate basis upon which this Court can dismiss the claim.

### D. THE PLAINTIFF CANNOT REQUEST LEAVE TO AMEND IN A RESPONSE BRIEF

In the last section of the Plaintiff's response, he seeks leave to amend his Complaint, but only if the Court grants the pending Motion to Dismiss. [Doc. 12] at pp. 15-16. This is highly improper, and the Plaintiff cannot be permitted to test the current pleading before the Court and then seek an amendment only if the current pleading fails. It is the Plaintiff's obligation to set forth a sufficient pleading without guidance from this Court, especially as he is represented by counsel.

The Eleventh Circuit "has clearly held that '[w]here a request for leave to file an amended complaint simply is embedded within an opposition memorandum, the issue has not been raised properly.'" *Cita Trust Co. AG v. Fifth Third Bank*, 879 F.3d 1151, 1157 (11th Cir. 2018) (quoting *Rosenberg v. Gold*, 554 F.3d 962, 967 (11th Cir. 2009) (citing *Long v. Satz*, 181 F.3d 1275, 1279-80 (11th Cir. 1999)). "A request for this Court to issue an order granting leave to amend must be made by written motion, stating with particularity the grounds for seeking the order and the relief sought." *Jones v. IndustryPro.com, Inc.*, No. 1:20-CV-1412-SCJ, 2021 WL 2593768, at *5 (N.D. Ga. March 2, 2021) (citing Fed. R. Civ. P. 7(b)(1)). Since the Plaintiff has not moved for leave to amend, his request that is embedded within his response brief must be denied.

## **CONCLUSION**

Based on the foregoing, the Defendants respectfully renew their request that this Court grant their Motion to Dismiss.

Respectfully submitted, this 20th day of January, 2022.

*/s/ Bret J. Chaness*
BRET J. CHANESS (GA Bar No. 720572)
**RUBIN LUBLIN, LLC**
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071
(678) 281-2730 (Telephone)
(470) 508-9203 (Facsimile)
bchaness@rlselaw.com
*Attorney for Defendants*

## **FONT CERTIFICATION**

The undersigned counsel hereby certifies that the within and foregoing was prepared using Times New Roman, 14-point font in accordance with LR 5.1(B).

This 20th day of January, 2022.

*/s/ Bret J. Chaness*
BRET J. CHANESS (GA Bar No. 720572)

## CERTIFICATE OF SERVICE

I hereby certify that I have, this 20th day of January, 2022, filed the within and foregoing via CM/ECF, which will electronically serve notice on all parties.

*/s/ Bret J. Chaness*
BRET J. CHANESS (GA Bar No. 720572)