## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| KEVIN WASSON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION FILE NUMBER** |
| | ) | **1:21-cv-04805-TWT** |
| ARCPE HOLDING, LLC, SERVIS | ) | |
| ONE, INC. *d/b/a* BSI FINANCIAL | ) | |
| SERVICES, and John Does 1-3, | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## <u>FIRST AMENDED COMPLAINT FOR DAMAGES</u>

**COMES NOW**, Kevin Wasson, Plaintiff in the above-styled action, and files this, his First Amended Complaint for Damages against the Defendants ARCPE Holding, LLC ("ARCPE"), Servis One, Inc. *d/b/a* BSI Financial Services ("BSI"), and John Does 1-3, showing the Court as follows:

## <u>Introduction</u>

On January 21, 2022, Mr. Wasson filed a Motion for Leave to Amend Complaint and Memorandum of Law in Support. [Doc 14]. The purpose of the Motion was to, in part, request leave to file an Amended Complaint "further elaborating upon his claims against Defendants." [Doc 14, para. 6]. The Court granted Mr. Wasson's Motion on February 7, 2022. [Doc 16].

1

This First Amended Complaint supersedes and replaces Mr. Wasson's original Complaint, initially filed in the Superior Court of Fulton County and then removed by the Defendants to this Court on November 22, 2021 [*see* Doc 1], in its entirety.

### Parties, Jurisdiction, and Venue

1.      Kevin Wasson is an individual owning real property in Georgia located at 2851 Summit Parkway, Atlanta, Fulton County, Georgia 30331 (the "Property").

2.      ARCPE is a limited liability company organized under the laws of the State of Florida and may be served with Summons and Process via its Registered Agent, John Olsen, at 1900 Sunset Harbour Drive, Annex Building – 2nd Floor, Miami Beach, Florida 33139.

3.      ARCPE transacts business in the State of Georgia, generally, and specifically transacted business with Mr. Wasson in the State of Georgia insofar as it is the Assignee of that certain Security Deed securing a loan on the Property.

4.      ARCPE committed a tortious injury in the State of Georgia, as detailed below, which was caused by said Defendant's actions or inactions outside this State.

5.      ARCPE claims to have a security interest in the Property, which is situated within the State of Georgia.

6.      BSI is a corporation incorporated under the laws of the State of Delaware which transacts business in the State of Georgia.  BSI may be served with Summons and Process via its Registered Agent, Incorp Services, Inc., at 9040 Roswell Road, Suite 500, Atlanta, Fulton County, Georgia 30350.

7.      Jurisdiction and venue are proper.

8.      John Does 1 – 3 are persons or entities who, upon information and belief, aided and abetted Defendants in their tortious conduct described herein, but whose identities are not yet known.

## Factual Background

9.      Kevin Wasson purchased the Property on November 29, 2006.

10.      To secure a loan for the purchase, Mr. Wasson executed two Security Deeds in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") on the day he purchased the Property.

11.      On September 5, 2013, MERS assigned its security interest in the Property to Asset Management Holdings, LLC, which in turn transferred its security interest on January 11, 2019, to 19 Asset Management Holdings, LLC.

3

12.    On February 8, 2019, 19 Asset Management Holdings, LLC purportedly assigned its interest in the Property to ARCPE.

13.    Upon information and belief, BSI acted as ARCPE's loan servicer for the Property.  However, it is presently unclear to Mr. Wasson i) whether, or to what extent, BSI acted under the direction and control of ARCPE with respect to the conduct set forth herein, and ii) whether BSI's conduct set forth herein fell within the scope of its agency relationship with ARCPE.

## COUNT I

## TORTIOUS INTERFERENCE WITH CONTRACT

14.    Mr. Wasson reasserts and realleges the foregoing Paragraphs as if expressly set forth below.

15.    On May 25, 2021, Mr. Wasson entered into a Purchase and Sale Agreement to sell the above-referenced property.

16.    As part of the closing process, the closing attorney had to contact all mortgagees on the Property to obtain the exact payoff amount.

17.    Four days prior to the binding agreement date, Mr. Wasson contacted BSI to request a direct line of communication with ARCPE.

18.    Christopher Carman with BSI responded that same day that "You will communicate with BSI going forward if you have any questions or issues with your account and not communicate with ARCPE."

19.    Mr. Wasson complied and instructed the closing attorney accordingly.

20.    On June 16, 2021, the closing attorney sent a Payoff Request to BSI. A true and correct copy of said Payoff Request is attached hereto as Plaintiff's Exhibit "A."

21.    Thereafter, the closing attorney made repeated additional requests to BSI to obtain the payoff information for ARCPE's loan.

22.    BSI never provided the payoff amount.

23.    The only way the loan could close was for BSI to provide the payoff information to the closing attorney.  Further, there was actual confusion as to who the proper payee was under the loan, as well as the correct amounts owed, due to a number of factors, including without limitation prior litigation between Mr. Wasson's previous mortgagees concerning ownership of the loans, and misrepresentations being made by various third parties to Mr. Wasson concerning the ownership of the loans and who the proper payee was.

24.    Upon information and belief, BSI and ARCPE knew that the sale could not close unless BSI provided the closing attorney with the loan payoff information.

25.    Instead of providing the loan payoff information, BSI told numerous lies to the closing attorney.

26.    Specifically, BSI told the closing attorney that i) the payoff amount had been sent via email, ii) the payoff amount had been faxed, iii) no documents could be provided to the closing attorney, and iv) the request for payoff amount was rejected because "it was not hand written by the customer."

27.    Each of these statements were untrue, and are material misrepresentations of fact.

28.    Upon information and belief, the Defendant BSI intentionally made these misrepresentations with the specific intent to harm Mr. Wasson due to deep seeded animosity it and/or ARCPE held towards Mr. Wasson.

29.    Specifically, in prior communications, Mr. Wasson had accused employees of BSI and/or ARCPE of being racist.  Upon information and belief, BSI's agents held animosity against Mr. Wasson due to these allegations of racism, and used the loan payoff request as an opportunity to cause him harm due to this animosity.

6

30.     As a result of BSI's misrepresentations and failure to provide the necessary payoff information, the sale was never able to close.

31.     Because the sale was unable to close, the purchaser terminated the Purchase and Sale Agreement and walked away, resulting in a several-hundred-thousand-dollar loss to Mr. Wasson.

32.     Upon information and belief, BSI acted as the agent of ARCPE and within the scope of its agency relationship.

33.     Alternatively, BSI acted on its own free will and accord, without direction of ARCPE, and with specific intent to cause harm to Mr. Wasson.

34.     BSI expressly told Mr. Wasson that it was the direct source of contact regarding his loan and forbade him from speaking with anyone with ARCPE.

35.     Then, BSI's active refusal to provide the required information to close the sale resulted in the purchaser terminating the contract.

36.     To the extent ARCPE was BSI's principal, ARCPE is liable for the wrongful actions of its agent because those actions were carried out within the scope of the agency relationship.  *See Stewart v. Storch*, 274 Ga. App. 242 (2005).

37.     BSI had no direct economic interest in and did not otherwise benefit from the Purchase and Sale Agreement.

38.     Besides having its loan prepaid, ARCPE had no direct economic interest in and did not otherwise benefit from the Purchase and Sale Agreement.

39.     As a direct result of ARCPE and its agent BSI's conduct, the purchasers terminated the Purchase and Sale Agreement and Mr. Wasson lost out on the proceeds of the sale and was financially injured in the amount of the contract price of $282,000.00.

## COUNT II

## BREACH OF CONTRACT

### (Prepayment Penalty Option Rider)

### (In the Alternative to Count III)

40.     Mr. Wasson reasserts and realleges the foregoing Paragraphs as if expressly set forth below.

41.     On November 29, 2006, Mr. Wasson entered into two Prepayment Penalty Option Riders as part of his original loan packet.  True and correct copies of the Riders are collectively attached hereto as Plaintiff's Exhibit "B."

42.     According to the Riders, their contents were "incorporated and shall be deemed to amend and supplement the Mortgage. . . ."  Mr. Wasson at all times complied with all his obligations under the loan documents, including the Riders.

43.     When the mortgage was assigned to ARCPE, ARCPE assumed all rights and obligations under the Riders.  The Riders are legally binding upon ARCPE, and are valid, binding, and enforceable agreements between Mr. Wasson and ARCPE.

44.     Under Paragraph II of the Riders, and throughout the course of the loan, Mr. Wasson had "the right to make payments of principal at any time before they are due.  The payment of principal only is known as a 'prepayment.'"

45.     This language created a duty upon ARCPE to allow Mr. Wasson to exercise his "right to make . . . prepayment[s]" pursuant to the terms of the Riders.

46.     Further, ARCPE had an implied duty to exercise good faith and fair dealing with respect to Mr. Wasson under all relevant loan documents, including the Riders.

47.     As part of its implied duty of good faith, ARCPE was required to "provide such cooperation as is required for the other party's performance" of its rights and obligations under the contract.  *Camp v. Peetluk*, 262 Ga. App. 345, 350 (2003).

48.     Mr. Wasson attempted to prepay his principal by selling his Property pursuant to the Purchase and Sale Agreement and delivering the sales proceeds to ARCPE to satisfy the debt.

49.    BSI, acting at the direction of ARCPE, refused to provide the loan payoff amount to the closing attorney, which resulted in the sale being terminated and Mr. Wasson not being able to prepay the loan.

50.    Upon information and belief, ARCPE directed or otherwise caused BSI to refuse to provide the loan payoff amount to the closing attorney, which resulted in the sale being terminated and Mr. Wasson not being able to prepay the loan.

51.    By engaging in the conduct set forth above, ARCPE violated the Rider and prevented Mr. Wasson from exercising his "right to make payments of principal at any time before they are due."

52.    Further, ARCPE, through its actions of directing BSI to fail to provide the loan payoff information, utterly failed to "provide such cooperation as [was] required for [Mr. Wasson's] performance" of his prepayment right under the Riders. *Camp*, at 350.

53.    The foregoing conduct amounts to a breach of contract by ARCPE.

54.    As a direct and proximate result of ARCPE's breach of contract, Mr. Wasson has been damaged in an amount to be proven at trial.

## COUNT III

## VIOLATION OF O.C.G.A. § 7-6A-3

### (In the Alternative to Count II)

55.    Mr. Wasson reasserts and realleges the foregoing paragraphs as if expressly set forth herein.

56.    O.C.G.A. § 7-6A-3(4) provides in relevant part with respect to home loans that, when requested, "[p]ayoff balances shall be provided within a reasonable time but in no event no more than five business days after the request."

57.    ARCPE breached the provisions of O.C.G.A. § 7-6A-3(4) in June 2021 by causing BSI to fail to provide the loan payoff balance after Mr. Wasson requested same.

58.    Pursuant to O.C.G.A. § 7-6A-7(a), "[a]ny creditor found by a preponderance of the evidence to have violated this chapter shall be liable to the borrower for the following:

**(1)** Actual damages, including consequential and incidental damages;
**(2)** Statutory damages equal to the recovery of two times the interest paid under the loan and forfeiture of interest under the loan for any violation of paragraph (1) or (2) of Code Section 7-6A-3, any violation of Code Section 7-6A-4, or any violation of Code Section 7-6A-5;
**(3)** Punitive damages subject to Code Section 51-12-5.1; and
**(4)** Costs and reasonable attorneys' fees."

59.     As a result of ARCPE's violation of O.C.G.A. § 7-6A-3(4), Mr.

Wasson has been damaged in an amount to be proven at trial.

60.     Mr. Wasson seeks all damages available to him under O.C.G.A. § 7-

6A-7(a).

## COUNT IV

## BREACH OF CONTRACT

### (Agreement to Settle Loan)

61.     Mr. Wasson reasserts and realleges the foregoing paragraphs as if

expressly set forth herein.

62.     On December 12, 2018, ARCPE sent a letter to Mr. Wasson offering

to settle the $43,937.00 loan for a lump sum payment of $20,000.00.

63.     The specific terms of the offer were as follows:

"Mr. Wasson will pay the sum of $20,000.00 on his balance of
$98,397.44 on or before December 27, 2018.  Payment must be made
via wire transfer, payable to ARCPE Holding, LLC.  Please find
enclosed our wiring instructions.

Upon verification of receipt of these funds, we will issue a
Satisfaction of Mortgage for the Security Deed dated 11/28/2006,
executed by DHI Mortgage Company, LTD., recorded in the Official
Records of Fulton County, State of Georgia for the amount of
$43,937.00, Book 44063, Page 132.

This offer will remain valid and binding on ARCPE Holding,
LLC until December 27, 2018.  Thereafter the settlement terms will

12

become null and void and the full balance due, noted herein above will become due and payable."

A true and correct copy of this offer letter is attached hereto as Plaintiff's Exhibit "C."

64.    Five days later on December 17, 2018, Mr. Wasson accepted ARCPE's offer.

65.    Mr. Wasson's December 17 acceptance created a valid and binding Agreement based off the terms of the December 12 letter.

66.    Pursuant to the Agreement, as consideration for being able to pay off the loan for a reduced sum, Mr. Wasson agreed to a lump sum payment of the $20,000 in lieu of making smaller payments made over an extended period of time. In return, ARCPE agreed to release the debt.

67.    To formally memorialize the parties' agreement, Mr. Wasson hired an attorney who prepared a Release Agreement, which Mr. Wasson signed and forwarded to Barry Brecher with ARCPE.

68.    Upon receiving the fully executed Agreement from ARCPE, Mr. Wasson was prepared to remit payment of the $20,000 to fully satisfy the loan – all in accordance with the parties' agreement.  This fact was further memorialized in the Release Agreement.

69.     Upon receipt of the partially executed Release Agreement, and after a binding contract was formed, Mr. Brecher replied via email that "we are not releasing your debt with out cleared funds in our office."

70.     According to ARCPE's offer letter however, Mr. Wasson had until December 27 to remit funds – a full 10 additional days.

71.     Mr. Wasson advised ARCPE of his acceptance of ARCPE's offer and his intent to remit payment in accordance with the parties' agreement.

72.     Yet, ARCPE subsequently refused to accept the payment by failing to execute the Release Agreement.

73.     ARCPE's refusal to accept $20,000 as full satisfaction of the debt amounts to a breach of contract.

## COUNT V

## ATTORNEYS' FEES AND EXPENSES OF LITIGATION

74.     Mr. Wasson reasserts and realleges the foregoing Paragraphs as if expressly set forth below.

75.     Defendants have acted in bad faith, been stubbornly litigious, and caused unnecessary trouble and expense within the meaning of O.C.G.A. § 13-6-11.

14

76.    Defendants are jointly and severally liable to Mr. Wasson for his attorneys' fees and expenses of litigation in an amount to be proven at trial.

**WHEREFORE**, Mr. Wasson respectfully requests the Court grant the following relief:

a)    That Summons and Process issue as required by law;

b)    That Defendants be found jointly and severally liable for tortious interference with contractual relations, as set forth in Count I;

c)    That ARCPE be found liable for breach of contract, as set forth in Count II;

d)    That ARCPE be found liable for violation of O.C.G.A. § 7-6A-3 as set forth in Count III;

e)    That ARCPE be found liable for breach of contract, as set forth in Count IV;

f)    That Defendants be found jointly and severally liable for attorneys' fees and expenses of litigation, as set forth in Count V; and

g)    For such further relief the Court deems just and proper.

This 17th day of February, 2022.

                                      **KING, YAKLIN & WIKLINS, LLP**

                                      /s/ Collin D. Hatcher

                                      Collin D. Hatcher

                                      Georgia Bar No: 926248

                                      *Attorney for Plaintiff*

192 Anderson Street
Suite 125
Marietta, Georgia 30060
(770) 424-9235 (telephone)
(770) 424-9239 (facsimile)
chatcher@kingyaklin.com

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served counsel of record in the foregoing matter with a copy of **FIRST AMENDED COMPLAINT FOR DAMAGES** by email through the Court's EFS system.

Bret J. Chaness, Esq.– bchaness@rlselaw.com

The Plaintiff's counsel also certifies that this document was prepared in Times New Roman 14 point and complies with LR 5.1.C.

This 17th of February, 2022.

**KING, YAKLIN & WILKINS, LLP**
*Attorneys for Plaintiff Kevin Wasson*

/s/Collin D. Hatcher
Collin D. Hatcher
Georgia Bar No. 926248

192 Anderson Street
Suite 125
Marietta, Georgia 30060
(770) 424-9235
(770) 424-9239 facsimile
chatcher@kingyaklin.com

Plaintiff's Exhibit "A"

# *Law Office of Kenneth R. Luther*
### *Residential Real Estate Closings*

**Main Office/Mailing Address:** 1825 Barrett Lakes Blvd, Ste 100, Kennesaw, GA 30144
**Additional Closing Locations:** Alpharetta, Duluth and Atlanta (Buckhead)

**www.kenlutherlaw.com**
Ph. 770.426.9889/Fax 770.528.0889
Email: kluther@kenlutherlaw.com

**PAYOFF REQUEST**

June 16, 2021

BSI FINANCIAL SERVICES
314 South Franklin Street
Titusville, PA 16354
Email : customercare@bsifinancial.com

| | |
|---|---|
| File Number: | 74497TM |
| Loan Number: | 1512213232 |
| Property: | 2851 Summit Parkway Southwest |
| | Atlanta, GA 30331 |
| Borrower: | Kevin L. Wasson |

To Whom It May Concern,

This office is serving as settlement agent for a transaction in which the referenced loan is to be satisfied in full. Settlement is scheduled for June 28, 2021.

PLEASE FAX TO THIS OFFICE, at (404) 506-9597, an itemized payoff statement good through  July 2, 2021, including a per diem interest rate and, if applicable, all costs for the release of this lien from the land records.

If the referenced loan is an equity line, credit line or other such revolving line of credit account, please BLOCK THIS ACCOUNT, so no additional amount may be charged against the account after release of your payment statement.

Very truly yours,

_____
Terrie McDaniel

The undersigned hereby authorize compliance with all requests made herein:

_____         _____
Kevin L. Wasson                                              Date (Kevin L. Wasson)

**Plaintiff's Exhibit "A"**

Plaintiff's Exhibit "B"

Deed Book **44063** Pg    **125**

## PREPAYMENT PENALTY OPTION RIDER

This Prepayment Rider is made this    28th    day of    November, 2006    and is incorporated and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed of the same date (the "Security Instrument") given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to DHI MORTGAGE COMPANY, LTD.
(the "Lender") of the same date and covering the property described in the Security Instrument and located at 2851 Summit Parkway, Atlanta, GA 30331
                                                  (the           "Property").

[Property Address]

Additional Covenants. In addition to the covenants and agreements made in the Note, Borrower further covenants and agrees as follows:

I. Waiver Of Prepayment Right
Notwithstanding any provision contained in the Note to the contrary, Borrower expressly waives any right to prepay the Loan in whole or in part during the Prepayment Premium Period, as defined below except as expressly provided in this Rider.

II. Conditions For Prepayment: Prepayment Premium

I/We have the right to make payments of principal at any time before they are due. The payment of principal only is known as a "prepayment". When I/We make a prepayment, I/We will tell the Note Holder in writing that I/We am/are doing so. If, within the first 36 months following the date of the Note and the Security Instrument I/We make a full prepayment or partial prepayment(s), I/We will at the same time pay to the Note Holder a prepayment charge. The prepayment charge will be equal to 1 % of any amount prepaid on the amount of any prepayment that when added to all other amounts prepaid during the twelve (12) month period preceding the date of any prepayment, exceeds twenty percent (20%) of the original principal amount of the Note.

III. OTHER UNSCHEDULED REDUCTIONS OF PRINCIPAL
For purposes of determining whether Borrower is making a qualified prepayment, Lender may consider any unscheduled reduction in the principal balance of the Loan during the Prepayment Premium Period to be a prepayment and, therefore, subject to the payment of a Prepayment Premium in accordance with the provisions of Section II above. An unscheduled reduction in the principal balance of the Loan may include or result from, without limitation, any or all of the following:

    a.    Any acceleration by Lender of the unpaid principal balance of the Note pursuant to the acceleration provisions contained in the Note and/or the Instrument, upon default by Borrower Notwithstanding the foregoing Lender shall not assess a Prepayment Premium in connection with the enforcement of Lender's right to accelerate the Loan upon the sale of the Property.

    b.    Any satisfaction or release of the Instrument by foreclosure (whether by power of sale or by judicial proceeding) deed in lieu of foreclosure, or any other means.

99PPRDR1.UFF 3/16/05                          Page 1 of 2                              000581753

**Plaintiff's Exhibit "B"**

Deed Book **44063** Pg    **126**

Notwithstanding the foregoing, no Prepayment Premium shall be due with respect to any prepayment or other unscheduled reduction in the principal balance of the Loan resulting from the exercise of Lenders option to apply insurance proceeds or condemnation awards to the unpaid principal balance of the Loan pursuant to the terms of the Instrument. In addition, if this Loan is sold to the Federal National Mortgage Association ("FNMA") or the Federal Home Loan Mortgage Corporation ("FHLMC"), no Prepayment Premium shall be due with respect to any prepayment or other unscheduled reduction in the principal balance of the Loan which occurs during the period of FNMA's or FHLMC's ownership of this Loan. Please sign your name exactly as it appears below:

| | | |
|---|---|---|
| _____ (Seal) -Borrower- | Nov. 29, 2006 _____ | _____ (Seal) -Borrower- |
| Kevin L Wasson | | |
| _____ (Seal) -Borrower- | | _____ (Seal) -Borrower- |
| _____ (Seal) -Borrower- | | _____ (Seal) -Borrower- |
| _____ (Seal) -Borrower- | | _____ (Seal) -Borrower- |
| _____ (Seal) -Borrower- | | _____ (Seal) -Borrower- |

*[Sign Original Only]*

000581753

99PPRDR2.UFF 3/05                    Page 2 of 2

Deed Book **44063** Pg   **136**

# PREPAYMENT PENALTY OPTION RIDER

This Prepayment Rider is made this     28th    day of     November, 2006        and is incorporated and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed of the same date (the "Security Instrument") given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to DHI MORTGAGE COMPANY, LTD.
(the "Lender") of the same date and covering the property described in the Security Instrument and located at 2851 Summit Parkway, Atlanta, GA 30331                                          (the              "Property").

[Property Address]

Additional Covenants. In addition to the covenants and agreements made in the Note, Borrower further covenants and agrees as follows:

I.Waiver Of Prepayment Right
Notwithstanding any provision contained in the Note to the contrary, Borrower expressly waives any right to prepay the Loan in whole or in part during the Prepayment Premium Period, as defined below except as expressly provided in this Rider.

II.Conditions For Prepayment: Prepayment Premium
I/We have the right to make payments of principal at any time before they are due. The payment of principal only is known as a "prepayment". When I/We make a prepayment, I/We will tell the Note Holder in writing that I/We am/are doing so. If, within the  first 36 months following the date of the Note and the Security Instrument I/We make a full prepayment or partial prepayment(s), I/We will at the same time pay to the Note Holder a prepayment charge. The prepayment charge will be equal to 1 % of any amount prepaid on the amount of any prepayment that when added to all other amounts prepaid during the twelve (12) month period preceding the date of any prepayment, exceeds twenty percent (20%) of the original principal amount of the Note.

III. OTHER UNSCHEDULED REDUCTIONS OF PRINCIPAL
For purposes of determining whether Borrower is making a qualified prepayment, Lender may consider any unscheduled reduction in the principal balance of the Loan during the Prepayment Premium Period to be a prepayment and, therefore, subject to the payment of a Prepayment Premium in accordance with the provisions of Section II above. An unscheduled reduction in the principal balance of the Loan may include or result from, without limitation, any or all of the following:
   a.    Any acceleration by Lender of the unpaid principal balance of the Note pursuant to the acceleration provisions contained in the Note and/or the Instrument, upon default by Borrower Notwithstanding the foregoing Lender shall not assess a Prepayment Premium in connection with the enforcement of Lender's right to accelerate the Loan upon the sale of the Property.
   b.    Any satisfaction or release of the Instrument by foreclosure (whether by power of sale or by judicial proceeding) deed in lieu of foreclosure, or any other means.

000584330

99PPRDR1.UFF 3/16/05                         Page 1 of 2

Deed Book **44063** Pg    **137**

Notwithstanding the foregoing, no Prepayment Premium shall be due with respect to any prepayment or other unscheduled reduction in the principal balance of the Loan resulting from the exercise of Lenders option to apply insurance proceeds or condemnation awards to the unpaid principal balance of the Loan pursuant to the terms of the Instrument. In addition, if this Loan is sold to the Federal National Mortgage Association ("FNMA") or the Federal Home Loan Mortgage Corporation ("FHLMC"), no Prepayment Premium shall be due with respect to any prepayment or other unscheduled reduction in the principal balance of the Loan which occurs during the period of FNMA's or FHLMC's ownership of this Loan. Please sign your name exactly as it appears below:

_____ (Seal)    *Nov. 29, 2006* _____ (Seal)
Kevin L Wasson                  -Borrower-                                -Borrower-

_____ (Seal)    _____ (Seal)
                                -Borrower-                                -Borrower-

_____ (Seal)    _____ (Seal)
                                -Borrower-                                -Borrower-

_____ (Seal)    _____ (Seal)
                                -Borrower-                                -Borrower-

_____ (Seal)    _____ (Seal)
                                -Borrower-                                -Borrower-

*[Sign Original Only]*

000584330

99PPRDR2.UFF 3/05                    Page 2 of 2

Plaintiff's Exhibit "C"

# ARCPE HOLDING, LLC

1900 Sunset Harbour Drive
The Annex, 2nd Floor
Miami Beach, FL 33139

December 12, 2018

Wasson, Kevin
3851 Summit Parkway
Atlanta, GA 30331

Re:
Lender:          **ARCPE Holding, LLC**
Our Loan#:       **11781**
Property Address: **2851 Summit Parkway, Atlanta, GA 30331**

Dear Sirs,

This letter shall serve as to the terms to release the Security Deed of Trust or Mortgage mentioned above.

Mr. Wasson will pay the sum of **$20,000.00** on his balance of **$98,397.44** on or before December 27, 2018. Payment must be made via wire transfer, payable to **ARCPE Holding, LLC.** Please find enclosed our wire instructions.

Upon verification of receipt of these funds, we will issue a Satisfaction of Mortgage for the Security Deed dated **11/28/2006**, executed by **DHI Mortgage Company, LTD**, recorded in the Official Records of Fulton County, State of Georgia for the amount of **$43,937.00, Book 44063, Page 132.**

This offer will remain valid and binding on **ARCPE Holding, LLC** until December 27, 2018. Thereafter the settlement terms will become null and void and the full balance due, noted herein above will become due and payable.

If you have any questions, fee free to contact our office.

Regards,

Loan Department

Enclosure – Wire instructions

**Plaintiff's Exhibit "C"**