## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

KEVIN WASSON,

     Plaintiff,

v.                                              Case No. 1:21-cv-04805-TWT

ARCPE HOLDING, LLC, SERVIS ONE,
INC. d/b/a BSI FINANCIAL SERVICES,
and John Does 1-3,

     Defendants.

---

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

COME NOW, ARCPE Holding, LLC ("ARCPE") and Servis One, Inc. d/b/a BSI Financial Services ("BSI") (ARCPE and BSI are sometimes referred to collectively as "Defendants"), and file this Memorandum of Law in Support of their Motion to Dismiss the Amended complaint [Doc. 17] pursuant to Fed. R. Civ. P. 12(b)(6), respectfully showing this Honorable Court as follows:

### STATEMENT OF FACTS

This case raises alleged issues with a mortgage loan obtained by the Plaintiff in 2006, with the subject security deed currently held by ARCPE. *See* [Doc. 17] at ¶ 12. The security deed currently held by ARCPE was executed on November 28,

1

2006, and recorded On December 13, 2006, in Deed Book 44063, Page 132, Fulton County, Georgia records (the "Security Deed"). A true and correct copy of the Security Deed is attached hereto as **Exhibit "A"**.[1] The Security Deed has been assigned three times, most recently to ARCPE. A true and correct copy of the recorded assignment to ARCPE is attached hereto as **Exhibit "B"**. The subject property is located at 2851 Summit Parkway, Atlanta, Georgia 30331 (the "Property"). [Doc. 17] at ¶¶ 1, 9. The Complaint in this case raises two distinct issues with the loan – one that occurred in 2018, and the other in 2021.

*1.  2018 Allegations*

On December 12, 2018, the Plaintiff alleges that "ARCPE sent a letter to [him] offering to settle the $43,937.00 loan for a lump sum payment of $20,000.00." *Id.* at ¶ 62. The letter, a copy of which is attached to the Amended Complaint, stated as follows:

> Mr. Wasson will pay the sum of $20,000.00 on his balance of $98,397.44 on or before December 27, 2018. Payment must be made via wire transfer, payable to ARCPE Holding, LLC. Please find enclosed our wiring instructions.

> Upon verification of receipt of these funds, we will issue a Satisfaction of Mortgage for the Security Deed dated 11/28/2006, executed by DHI Mortgage Company, LTD., recorded in the Official

---

[1] This Court can take judicial notice of public records on a Motion to Dismiss without converting the motion to one for summary judgment. *See Bryant v. Avado Brands, Inc.*, 187 F.2d 1271, 1280 (11th Cir. 1999).

Records of Fulton County, State of Georgia for the amount of $43,937.00, Book 44063, Page 132.

This offer will remain valid and binding on ARCPE Holding, LLC until December 27, 2018. Thereafter the settlement terms will become null and void and the full balance due, noted herein above will become due and payable.

*Id.* at ¶ 63.

The Plaintiff claims that he "accepted ARCPE's offer" on December 17, 2018, and that this "acceptance created a valid and binding Agreement" despite never paying the funds required by the offer letter. *Id.* at ¶ 65. The Plaintiff then hired an attorney to prepare a written release agreement, "which [the Plaintiff] signed and forwarded to Barry Brecher with ARCPE." *Id.* at ¶¶ 67. However, ARCPE – very reasonably and in line with its offer letter – stated that it would not sign a release agreement until it had cleared funds in its possession. *Id.* at ¶ 69. The Plaintiff, however, claims that "ARCPE refused to accept the payment by failing to execute the Release Agreement," which the Plaintiff had drafted on his own accord. *Id.* at ¶ 72. As a result of the alleged refusal to accept funds that the Plaintiff never claims to have tendered, he asserts that ARCPE is liable for breach of contract. *Id.* at ¶ 73.

   *2. 2021 Allegations*

3

The Plaintiff alleges that he entered into a purchase and sale agreement on May 25, 2021, to sell the Property. *Id.* at ¶ 15. Four days prior to this, the Plaintiff says that he contacted BSI – ARCPE's loan servicer – "to request a direct line of communication with ARCPE." *Id.* at ¶ 17. BSI, through one of its employees, advised the Plaintiff that he must have communication with BSI, and not directly with ARCPE. *Id.* at ¶ 18. Thereafter, a closing attorney requested payoff information from BSI, which it allegedly never provided *Id.* at ¶¶ 20-22. BSI allegedly "told the closing attorney that i) the payoff amount had been sent via email, ii) the payoff amount had been faxed, iii) no documents could be provided to the closing attorney, and iv) the request for payoff amount was rejected because 'it was not hand written by the customer.'" *Id.* at ¶ 26. The Plaintiff claims that these were all "lies" and that "BSI intentionally made these misrepresentations due to deep seeded [*sic*] animosity it and/or ARCPE held towards Mr. Wasson." *Id.* at ¶¶ 25, 28.

Without any details, the Plaintiff then makes the loaded accusation that "in prior communications, Mr. Wasson had accused employees of BSI and/or ARCPE of being racist" and that "BSI's agents held animosity against Mr. Wasson due to these allegations of racism, and used the loan payoff request as an opportunity to cause him harm due to this animosity." *Id.* at ¶ 29.

4

The Plaintiff claims that due to the inability to get a payoff statement, "the purchaser terminated the Purchase and Sale Agreement and walked away, resulting in a several-hundred-thousand dollar loss to [the Plaintiff]." *Id.* at ¶ 31. The Plaintiff is seeking to recover this amount – $282,000.00 to be exact – through a claim for tortious interference with contract. *Id.* at ¶¶ 14-39. Within this claim, the Plaintiff pleads inconsistently that BSI was acting as ARCPE's agent and that BSI "acted on its own free will and accord, without direction of ARCPE, and with specific intent to cause harm to Mr. Wasson." *Id.* at ¶ 33.

In addition to the tortious interference claim, the Plaintiff also set forth a claim for breach of contract related to the alleged failure to provide payoff information. *Id.* at ¶¶ 40-54. The Plaintiff claims that a rider to the subject security deed granted him "the right to make payments of principal at any time before they are due. The payment of principal only is known as a 'prepayment.'" *Id.* at ¶ 44. The Plaintiff then goes on to allege as follows:

> 45. This language created a duty upon ARCPE to allow Mr. Wasson to exercise his "right to make . . . prepayment[s]" pursuant to the terms of the Riders.

> 46. Further, ARCPE had an implied duty to exercise good faith and fair dealing with respect to Mr. Wasson under all relevant loan documents, including the Riders.

> 47. As part of its implied duty of good faith, ARCPE was required to "provide such cooperation as is required for the other party's

performance" of its rights and obligations under the contract. *Camp v. Peetluk*, 262 Ga. App. 345, 350 (2003).

48. Mr. Wasson attempted to prepay his principal by selling his Property pursuant to the Purchase and Sale Agreement and delivering the sales proceeds to ARCPE to satisfy the debt.

49. BSI, acting at the direction of ARCPE, refused to provide the loan payoff amount to the closing attorney, which resulted in the sale being terminated and Mr. Wasson not being able to prepay the loan.

50. Upon information and belief, ARCPE directed or otherwise caused BSI to refuse to provide the loan payoff amount to the closing attorney, which resulted in the sale being terminated and Mr. Wasson not being able to prepay the loan.

51. By engaging in the conduct set forth above, ARCPE violated the Rider and prevented Mr. Wasson from exercising his "right to make payments of principal at any time before they are due."

52. Further, ARCPE, through its actions of directing BSI to fail to provide the loan payoff information, utterly failed to "provide such cooperation as [was] required for [Mr. Wasson's] performance" of his prepayment right under the Riders. *Camp*, at 350.

53. The foregoing conduct amounts to a breach of contract by ARCPE.

54. As a direct and proximate result of ARCPE's breach of contract, Mr. Wasson has been damaged in an amount to be proven at trial.

*Id.* at ¶¶ 45-54.

The final claim that remains in the Amended Complaint is for an alleged

statutory violation of O.C.G.A. § 7-6A-3, which provides that "payoff balances

shall be provided within a reasonable time but in no event more than five business days after the request." *Id.* at ¶ 56.

## ARGUMENT AND CITATION OF AUTHORITY

### A.   STANDARD OF REVIEW

This Court may grant a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) if the complaint does not state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). In considering a motion to dismiss, the Court must treat all well-plead allegations of the Complaint as true. *Id.* However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

**B.      THE PLAINTIFF HAS FAILED TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT**

In Count I, the Plaintiff attempts to state a claim for tortious interference with contract for the alleged failure to provide a payoff statement.

> The elements of tortious interference with a contract consist of (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of a contractual obligation or caused a third party to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately causes damage to the plaintiff.

*Rowell v. Phoebe Putney Mem'l Hosp., Inc.*, 791 S.E.2d 183, 185 (Ga. Ct. App. 2016) (quoting *Culpepper v. Thompson*, 562 S.E.2d 837 (Ga. Ct. App. 2002)).

The Plaintiff is attempting this cause of action under two theories. The first is that BSI was acting as ARCPE's agent "and within the scope of its agency relationship" and the secondly that "BSI acted on its own free will and accord, without the direction of ARCPE, and with specific intent to cause harm to Mr. Wasson." [Doc. 17] at ¶¶ 32-33. Regardless of the theory, though, the Plaintiff cannot establish the elements of the cause of action.

### 1. *There was no wrongful conduct and ARCPE was not a stranger to the contract*

First, the Plaintiff must show that ARCPE (through its agent BSI) or BSI individually exhibited "improper action or wrongful conduct" that was "without

privilege." *Id.* The phrase "improper action or wrongful conduct" "generally involves predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions." *Kirkland v. Tamplin*, 645 S.E.2d 653, 656 (Ga. Ct. App. 2007) (citations omitted). In other words, "such wrongful conduct must amount to a crime or an independent tort . . . ." *Smith v. Meridian Techs., Inc.*, 86 A.D.3d 557, 560, 927 N.Y.S.2d 141, 144 (2011) (citation omitted).[2]  Additionally,

> [t]o establish under the first element that the defendant acted "without privilege," the plaintiff must show that the defendant was a stranger to the contract or business relation at issue. *ASC Constr. Equip. USA, Inc. v. City Commercial Real Estate, Inc.,* 303 Ga. App. 309, 313, 693 S.E.2d 559 (2010). Under the so-called "stranger doctrine," "only a stranger to both the contract at issue and the business relationship giving rise to and underpinning the contract may be liable for tortious interference [with the contract or the relationship]." (Citation and punctuation omitted.) *Perry Golf Course Development, LLC v. Housing Auth. of the City of Atlanta,* 294 Ga. App. 387, 390, 670 S.E.2d 171 (2008); *Atlanta Market Center Mgmt. Co. v. McLane,* 269 Ga. 604, 608–610, 503 S.E.2d 278 (1998). "One is not a stranger to the contract just because one is not a party to the contract...." Id. at 608, 503 S.E.2d 278. **Those who have a direct economic interest in or would benefit from a contract with which they are alleged to have interfered (even though not intended third-party beneficiaries of the contract) are not strangers to the contract and**

---

[2] New York has the exact same requirement as Georgia of wrongful conduct in claims for tortious interference with contract. *Compare id. with Kirkland*, 645 S.E.2d at 656. In *Smith*, the New York court set forth the same language as in *Kirkland*, noting that "such wrongful conduct . . . may consist of 'physical violence, fraud or misrepresentation, civil suits and criminal prosecutions.'" 86 A.D.3d at 560 (citation omitted).

> **cannot have tortiously interfered.** Id. at 609, 503 S.E.2d 278.
> Moreover, "all parties to an interwoven contractual arrangement are
> [not strangers and therefore] not liable for tortious interference with
> any of the contracts or business relationships." Id. at 609–610, 503
> S.E.2d 278.

*Mabra v. SF, Inc.*, 728 S.E.2d 737, 740 (Ga. Ct. App. 2012) (emphasis added).

Here, the Plaintiff is trying to satisfy the first element by alleging that there was fraud or misrepresentation by ARCPE or BSI. *See* [Doc. 17] at ¶¶ 27-28. A linchpin of a fraud or misrepresentation claim is detrimental reliance. *See Brady v. Dandridge*, 379 S.E.2d 543, 545 (Ga. Ct. App. 1989) (negligent misrepresentation); *Int'l. Indem. Co. v. Terrell*, 344 S.E.2d 239 (Ga. Ct. App. 1986) (citations omitted) (fraud). The Complaint here contains absolutely no allegations of detrimental reliance on any alleged misrepresentations. Moreover, since the Plaintiff asserts that this claim is based on fraud or misrepresentation, Fed. R. Civ. P. 9(b) comes into play, which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

> Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what
> statements were made in what documents or oral representations or
> what omissions were made, and (2) the time and place of each such
> statement and the person responsible for making (or, in the case of
> omissions, not making) same, ... (3) the content of such statements
> and the manner in which they misled the plaintiff, and (4) what the
> defendants obtained as a consequence of the fraud."

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (citing *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1371 (11th Cir. 1997)).

Here, the Complaint contains no specific allegations regarding the alleged misrepresentations. The extent of the allegations is that:

> . . . BSI told the closing attorney that i) the payoff amount had been sent via email, ii) the payoff amount had been faxed, iii) no documents could be provided to the closing attorney, and iv) the request for payoff amount was rejected because "it was not hand written by the customer."

[Doc. 17] at ¶ 26.

This one sentence does not say when each statement was made, how it was made, who made it, in what manner it was made, "the manner in which they misled the plaintiff," or "what the defendants obtained as a consequence of the fraud." Since the Plaintiff utterly failed to comply with Rule 9(b) and failed to show any detrimental reliance, he has failed to state a claim for tortious interference with contract based on fraud or misrepresentation.

### 2. *ARCPE was acting with privilege*

One cannot be liable for tortious interference with contract unless they were a stranger to the contract. "Those who have a direct economic interest in or would benefit from a contract with which they are alleged to have interfered (even though not intended third-party beneficiaries of the contract) are not strangers to the

contract and cannot have tortiously interfered." *Mabra*, 728 S.E.2d at 740; *see also*

*Brooks v. Branch Banking and Trust Co.*, 107 F. Supp. 3d 1290 (N.D. Ga. 2015).

In *Brooks*, the plaintiff had a mortgage loan with Branch Banking and Trust

Company that encumbered rental property. *Id.* at 1294. The plaintiff fell behind on

her payments and the bank refused to negotiate a modification. *Id.* While the

plaintiff was trying to work out a resolution, she alleged that

> Defendant or its agents and contractors "intentionally harassed and
> interfered with Plaintiff's tenants by: [a]dvising them not to pay rent to
> Plaintiff because they would be evicted; [i]nvading their privacy by
> visiting and photographing the property; *and,* [h]arassing them with
> attempted visits to the Property." *Id.* (emphasis in original). Defendant
> disclosed "Plaintiff's banking status with her tenants and improperly
> represented her default (or alleged default) as well as her efforts to
> keep the mortgage current."

*Id.*

One of the claims asserted in the case was for tortious interference with

contract. *Id.* at 1300. In analyzing the claim, this Court noted that the security deed

between the parties contained an assignment of rents. *Id.* at 1301. Because of this,

this Court concluded that Branch Banking and Trust was not a stranger to the lease

agreements between the Plaintiff and her tenants. *Id.*

Here, the facts are analogous. Just as in *Brooks*, ARCPE was not a party to

the contract at issue – a purchase and sale agreement between the Plaintiff and a

third party. However, if that sale closed, then ARCPE would have benefitted by

being paid the full amount of its loan from the sale proceeds, just as performance of the lease agreements in *Brooks* would have enabled the bank to obtain the rent money. BSI was also acting with privilege to the extent that it was acting as the agent of ARCPE within the scope of its duties as agent. *See Atlanta Mkt. Ctr. Mgmt., Co. v. McLane*, 503 S.E.2d 278, 282-83 (Ga. 1998) (collecting cases) (agents of non-strangers to a contract are also not strangers); *Harrick v. Nat'l Collegiate Athletic Ass'n*, 454 F. Supp. 2d 1255, 1260 (N.D. Ga. 2006) (citing *McLane*, 503 S.E.2d at 282). As such, the claim must be dismissed as to ARCPE on this basis, and must also be dismissed as to BSI under the theory that it was the agent of ARCPE acting within the scope of its duties.

### 3. *The Plaintiff has failed to show damages*

The Plaintiff has also failed to plead any facts that plausibly show he was damaged by any tortious interference with contract. Georgia case law is noticeably silent with respect to the measure of damages in a tortious interference claim, but the Restatement (Second) of Torts[3] says the following:

> (1) One who is liable to another for interference with a contract or prospective contractual relation is liable for damages for
>     (a) the pecuniary loss of the benefits of the contract or the prospective relation;

---

[3] Georgia courts view the Restatement as persuasive authority. *See Walker v. Giles*, 624 S.E.2d 191, 202 (Ga. Ct. App. 2005) (citation omitted).

(b) consequential losses for which the interference is a legal cause; and

(c) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference.

*Westfield Dev. Co. v. Rifle Inv. Assocs.*, 786 P.2d 1112, 1120 (Colo. 1990) (quoting Restatement (Second) of Torts, § 774A(1)).

Here, the Plaintiff claims that he "lost out on the proceeds of the sale and was financially injured in the amount of the contract price of $282,000.00." [Doc. 17] at ¶ 39. However, this is implausible. He admits that he has at least two security deeds on the Property, and perhaps more liens. *See* [Doc. 17] at ¶ 10. The Plaintiff would have never stood to benefit $282,000.00, as it is evident that the Property was not being sold subject to the security deeds, but free and clear of them (i.e., they were to be satisfied from sale proceeds). *See, e.g., id.* at p. 19. Moreover, he still retains ownership of the Property, which could have increased in value since the contract fell through, meaning it is possible that he will *benefit* from the loss of the contract. *See https://www.ajc.com/news/atlanta-news/home-prices-up-235-from-a-year-ago-with-investors-fueling-the-surge/SEWIVTK54ZBL3FT242HFVTFXG4/* (home prices in Atlanta have increased 23.5% year over year). Thus, unless the Plaintiff can plead facts showing that he could only sell the Property now for less than $282,000.00 – which would

14

be purely speculative unless he actually sells it – he cannot state a claim for tortious interference.[4] Count I should be dismissed.

## C. THE PLAINTIFF FAILED TO STATE A CLAIM FOR BREACH OF CONTRACT IN COUNT II

In Count II, the Plaintiff asserts a breach of contract claim based on the contention that "ARCPE violated the [Prepayment] Rider and prevented Mr. Wasson from exercising his 'right to make payments of principal at any time before they are due.'" [Doc. 1] at ¶ 51. "The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *SAWS at Seven Hills, LLC v. Forestar Realty, Inc.*, 805 S.E.2d 270, 274 (Ga. Ct. App. 2017) (citation omitted).

The Plaintiff claims that the Prepayment Rider[5] "created a duty upon ARCPE to allow Mr. Wasson to exercise his 'right to make . . . prepayment[s]'

---

[4] The Plaintiff only claims a pecuniary loss and not any consequential losses or emotional distress.

[5] The Plaintiff incorrectly asserts that he executed two Prepayment Riders in connection to the Security Deed. *See* [Doc. 17] at ¶ 41. The Security Deed is recorded in Deed Book 53103, Pages 132-142. *See* Ex. A hereto. The Plaintiff attached two identical Riders to the Amended Complaint, except that one is recorded in Deed Book 44063, Page 126 [Doc. 17 at p. 22] while the other is recorded in Deed Book 44063, Page 137 [Doc. 17 at p. 24]. The Rider at Page 126 is clearly not part of the Security Deed, but in instead part of the senior security

pursuant to the terms of the Rider." [Doc. 1] at ¶ 45. However, the Prepayment Rider says no such thing, and Georgia law will only imply contractual duties in limited circumstances.

> In deciding whether to imply promises or duties to the terms of a contract, " 'the introduction of an implied term into the contract of the parties ... can only be justified when the implied term is not inconsistent with some express term of the contract and where there arises from the language of the contract itself, and the circumstances under which it was entered into, an inference that it is absolutely necessary to introduce the term to effectuate the intention of the parties.' " Williston on Contracts, 3rd Ed., § 1295; accord, *Weatherly v. American Agricultural Chemical Co.,* 16 Tenn. App. 613, 65 S.W.2d 592, 598 (Tenn.App.1933). Consequently, though courts are generally reluctant to make contracts for the parties, they will imply promises or duties when justice, good faith, or fairness so demand. Williston on Contracts, supra; 3 Corbin on Contracts, §§ 541, 561.

*Higginbottom v. Thiele Kaolin Co.*, 304 S.E.2d 365, 366 (Ga. 1983).

A full reading of the Prepayment Rider and viewing "the circumstances under which it was entered into" shows that implying such a duty would be contrary to "the intention of the parties" and therefore would be inappropriate. The full title of the Prepayment Rider is the "Prepayment Penalty Option Rider" and it provides that the Plaintiff must pay a penalty if he prepays any amount of the principal before it is due during the first 36 months of the loan term. *See* [Doc 17] at pp. 21-24. If prepaid after that date, there is no penalty. *Id.* The purpose of the

---

deed that is not held by ARCPE. *See id.* at ¶ 10 (noting that the Plaintiff executed two security deeds).

Rider is clearly about penalties only, and not about imposing any sort of obligation on ARCPE to help facilitate a prepayment. As such, "it is [not] absolutely necessary" to impose a duty on ARCPE. *See Higginbottom*, 304 S.E.2d at 366. Because there was no duty imposed on ARCPE, it could not have breached any such duty.

The Plaintiff then goes on in the Amended Complaint to assert that ARCPE breached the implied covenant of good faith and fair dealing. *See* [Doc. 17] at ¶¶ 46-47. However, "the covenant cannot breached apart from the contract provision it modifies and therefore cannot provide an independent basis for liability." *Oconee Fed. Savings and Loan Ass'n v. Brown*, 831 S.E.2d 222, 231 (Ga. Ct. Ap. 2019) (citation omitted). Where the associated breach of contract claim fails, so does any allegation that the implied covenant of good faith and fair dealing was breached. *Id.* Since there was no breach of any contractual duty, there was also no breach of the implied covenant of good faith and fair dealing.

Even if this Court was to find an implied duty was imposed on ARCPE, the Plaintiff has still failed to state a claim. An essential element of a breach of contract claim is damages. *See SAWS at Seven Hills*, 805 S.E.2d at 274. Here, the Plaintiff has failed to allege any facts showing how he was possibly damaged by any breach. Within Count II, the Plaintiff only says that "[a]s a direct and

proximate result of ARCPE's breach of contract, Mr. Wasson has been damaged in an amount to be proved at trial." [Doc. 17] at ¶ 54. Such a "generic statement" of damages "is simply not enough to survive a motion to dismiss on a breach of contract claim . . . ." *Jean-Pierre v. Home Am. Mortg., Inc.*, No. 1:13-CV-1777-ODE-JSA, 2014 WL 12859278, at *5 (N.D. Ga. Mar. 4, 2014). The Plaintiff has failed to state a claim for breach of contract in Count II and it should be dismissed.

## D.    COUNT III IS BARRED BY THE STATUTE OF LIMITATIONS

In Count III, the Plaintiff claims that "ARCPE breached the provisions of O.C.G.A. § 7-6A-3(4) in June 2021 by causing BSI to fail to provide the loan payoff balance after Mr. Wasson requested same." [Doc. 17] at ¶ 57. The relevant portion of the statute – which is part of the Georgia Fair Lending Act ("GFLA") provides that "[p]ayoff balances shall be provided within a reasonable time but in no event more than five business days after the request." O.C.G.A. § 7-6A-3(4). "A claim under the GFLA must be brought 'within five years after the first payment due date by the borrower under the home loan.'" *Whiddon v. Specialized Loan Servicing LLC*, No. 2:16-CV-00283-RWS-JCF, 2017 WL 11151672, at *5 (N.D. Ga. June 23, 2017), *report and recommendation adopted as modified*, 2017 WL 11151671 (N.D. Ga. Sept. 26, 2017) (citing O.C.G.A. § 7-6A-7(h)).

Here, the loan at issue was originated on November 28, 2006, so any claim under the GFLA must have been brought no later than late 2011. As such, the claim is barred by the statute of limitations and Count III must be dismissed.

Even if the claim was not barred by the statute of limitations, it still fails because the Plaintiff has failed to plead facts showing how he has been damaged. Under O.C.G.A. § 7-6A-7(a),

> (a) Any creditor found by a preponderance of the evidence to have violated this chapter shall be liable to the borrower for the following:
>> (1) Actual damages, including consequential and incidental damages;
>> (2) Statutory damages equal to the recovery of two times the interest paid under the loan and forfeiture of interest under the loan for any violation of paragraph (1) or (2) of Code Section 7-6A-3, any violation of Code Section 7-6A-4, or any violation of Code Section 7-6A-5;
>> (3) Punitive damages subject to Code Section 51-12-5.1; and
>> (4) Costs and reasonable attorneys' fees.

Statutory damages are not available because the alleged violation is not of one of the sections specified in O.C.G.A. § 7-6A-7(a)(2). And the Plaintiff has failed to plead any facts showing actual damages, again stating that he "has been damaged in an amount to be proven at trial." [Doc. 17] at ¶ 59. This is insufficient to show a plausible claim of damages. *See Jean-Pierre*, 2014 WL 12859278, at *5 (N.D. Ga. Mar. 4, 2014). Instead, facts must be pleaded. *See Iqbal*, 556 U.S. at 678. Finally, punitive damages are out of the question because they cannot be

recovered without at least a showing of actual damages. *Snipes v. Leaseway of Georgia, Inc.*, 257 S.E.2d 40, 41 (Ga. Ct. App. 1979) (collecting cases). Count III fails and should be dismissed.

## D.  THE PLAINTIFF HAS FAILED TO STATE A CLAIM FOR BREACH OF CONTRACT

In Count IV, the Plaintiff tries to bring a breach of contract claim against ARCPE based on the allegations that he had supposedly entered into a contract with ARCPE in 2018 to settle his $43,937.00 debt for $20,000.00, and that ARCPE refused to accept this payment as full satisfaction. *See* [Doc. 17] at ¶¶ 61-73. An obvious prerequisite to bringing a breach of contract claim is the existence of a contract. *Grady Mem. Hosp. Corp. v. Hayes*, 801 S.E.2d 55, 57 (Ga. Ct. App. 2017).

A contract is not valid if there is no consideration. *Thomas v. Wells Fargo Bank, N.A.*, No. 1:20-CV-00229-SDG-RGV, 2021 WL 2650360, at *7 (N.D. Ga. Jan. 19, 2021), *report and recommendation adopted in part*, 2021 WL 1244673 (N.D. Ga. Mar. 11, 2021) (citations omitted). "The element of consideration requires an act, a forbearance, a detriment, or a destruction of a legal right, or a return promise, bargained for and given in exchange for the promise." *Id.* at *8 (quoting *Harbin v. Roundpoint Mortg. Co.*, 758 F. App'x 753, 757 (11th Cir. 2018)). "An agreement on the part of one to do what he is already legally bound to

do is not sufficient consideration for the promise of another." *Citizens Trust Bank v. White*, 618 S.E.2d 9, 11-12 (Ga. Ct. App. 2005) (citations omitted). The "payment of a debt that [the plaintiff] already owed [is] not" adequate consideration for a contract. *Id.*; *see also Thomas*, 2021 WL 2650360, at *8 (collecting cases). Here, the Plaintiff was clearly already obligated to pay the pre-existing debt to ARCPE, and his alleged agreement to pay what he already owed is not consideration for a new contract. As such, he has failed to state a claim for breach of contract and Count III should be dismissed.

And even if payment of a pre-existing debt that the Plaintiff was obligated to pay could be consideration sufficient to form a contract, the Plaintiff has still failed to state a claim because the facts show that, at best and assuming payment of the pre-existing debt could be consideration, ARCPE made an offer for a unilateral contract that could only be accepted by the Plaintiff's performance of making a $20,000.00 payment. "A unilateral contract is an offer in writing which makes promises in consideration for acts of performance which are not only the acceptance, but also the consideration flowing to the party making the offer in writing." *Cardin v. Outdoor East*, 481 S.E.2d 872, 873 (Ga. Ct. App. 1997) (collecting cases).

Here, the Complaint states that ARCPE made an offer in writing to the Plaintiff on December 12, 2018, stating as follows:

> Mr. Wasson will pay the sum of $20,000.00 on his balance of $98,397.44 on or before December 27, 2018. Payment must be made via wire transfer, payable to ARCPE Holding, LLC. Please find enclosed our wiring instructions.
>
> Upon verification of receipt of these funds, we will issue a Satisfaction of Mortgage for the Security Deed dated 11/28/2006, executed by DHI Mortgage Company, LTD., recorded in the Official Records of Fulton County, State of Georgia for the amount of $43,937.00, Book 44063, Page 132.
>
> This offer will remain valid and binding on ARCPE Holding, LLC until December 27, 2018. Thereafter the settlement terms will become null and void and the full balance due, noted herein above will become due and payable.

[Doc. 17] at ¶ 63.

ARCPE further told the Plaintiff that "we are not releasing your debt with out cleared funds in our office." *Id.* at ¶ 69. This is the epitome of a unilateral contract that could only have been accepted by the Plaintiff's performance – payment of $20,000.00 by December 27, 2018. He admits he never paid that. *See id.* at ¶¶ 68-72. The Plaintiff claims to have acted on his own to demand the execution of a release agreement prior to tendering the funds. *Id.* at ¶ 67. "[I]t is . . . a fundamental principle of contract law that 'an offeror is the master of his or her offer, and free to set the terms thereof.'" *Grange Mut. Cas. Co. v. Woodward*, 797

S.E.2d 814, 819 (Ga. Ct. App. 2017) (citation omitted). A response to an offer that requires an additional act is a counteroffer, not an acceptance. *Id.* (citing *Frickey v. Jones*, 630 S.E.2d 374, 376-77 (Ga. 2006)). Thus, the Plaintiff's demand for a signed agreement prior to tendering the funds was a counteroffer that was clearly rejected by ARCPE's refusal to sign and there was simply no contract ever formed – even if payment of past debt could be consideration. The Plaintiff has utterly failed to state a claim for breach of contract, and Count IV should be dismissed.

## E.    THE PLAINTIFF CANNOT RECOVER ATTORNEY'S FEES AND EXPENSES OF LITIGATION

In the final claim in the Complaint, the Plaintiff seeks to recover attorney's fees and expenses of litigation under O.C.G.A. § 13-6-11. However, recovery under this statute requires that a plaintiff succeed on an underlying cause of action. *See Davis v. Johnson*, 634 S.E.2d 108, 110-111 (Ga. Ct. App. 2006). Because all of the Plaintiff's underlying claims fail, so too does his claim under § 13-6-11 and it must be dismissed.

## <u>CONCLUSION</u>

Based on the foregoing, the Defendants respectfully request that this Court grant their Motion to Dismiss the Amended Complaint.

Respectfully submitted, this 3ʳᵈ day of March, 2022.

*/s/ Bret J. Chaness*
BRET J. CHANESS (GA Bar No. 720572)
**RUBIN LUBLIN, LLC**
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071
(678) 281-2730 (Telephone)
(470) 508-9203 (Facsimile)
bchaness@rlselaw.com

*Attorney for ARCPE Holding, LLC and
Servis One, Inc. d/b/a BSI Financial
Services*

## **<u>FONT CERTIFICATION</u>**

The undersigned counsel hereby certifies that the within and foregoing was

prepared using Times New Roman, 14-point font in accordance with LR 5.1(B).

This 3rd day of March, 2022.

*<u>/s/ Bret J. Chaness</u>*
BRET J. CHANESS (GA Bar No. 720572)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have, this 3rd day of March, 2022, filed the within and foregoing via CM/ECF, which will electronically serve notice on all parties.

*/s/ Bret J. Chaness*
BRET J. CHANESS (GA Bar No. 720572)

# EXHIBIT "A"

Deed Book 44063 Pg  132
Filed and Recorded Dec-13-2006 12:02pm
2006-0414311
Georgia Intangible Tax Paid $132.00
**Juanita Hicks**
Clerk of Superior Court
Fulton County, Georgia

AFTER RECORDING RETURN TO:
MORRIS / HARDWICK / SCHNEIDER
120 HOWARD LANE
FAYETTEVILLE, GA 30215

After Recordation Return to:
DHI Mortgage Company
Post Closing Department
12357 Riata Trace Pkwy, Suite C150
Austin, TX  78727
000584330 220

This instrument is made subject, junior and subordinate to the terms, covenants and sums secured by that Security Deed, from Grantor to:
_DHI Mortgage Company, LTD_
of even date in the principal amount of $ _175,744.00_
executed and delivered prior to and to be recorded simultaneously herewith in the aforesaid County and State deed records.

## SECURITY DEED   MIN

THIS DEED is made this 28th      day of November, 2006                    , between the Grantor,
Kevin L Wasson, an unmarried man

(herein "Borrower"), and the Grantee,
Mortgage Electronic Registration Systems, Inc., ("MERS"), solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. DHI MORTGAGE COMPANY, LTD.

("Lender") is organized and existing under the laws of Texas
and has an address of 12357 Riata Trace Pkwy, Suite C150
Austin, TX  78727

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $43,937.00
which indebtedness is evidenced by Borrower's note dated November 28, 2006
and extensions and renewals thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on December 1, 2036               ;

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed to Secure Debt; and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby grant and convey to MERS, (solely as nominee for Lender and Lender's successors and assigns), and the successors and assigns of MERS, with power of sale, the following described property located in the County of Fulton
, State of Georgia:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 140 OF THE 14FF DISTRICT, FULTON COUNTY, GEORGIA, BEING LOT 188, BLOCK D, PHASE 3, POD C OF SUMMIT AT STONEWALL TELL ROAD SUBDIVISION, AS PER PLAT THEREOF RECORDED IN PLAT BOOK 288, PAGE 64-69, FULTON COUNTY, GEORGIA RECORDS, WHICH RECORDED PLAT IS INCORPORATED HEREIN BY REFERENCE AND MADE A PART OF THIS DESCRIPTION.

which has the address of 2851 Summit Parkway                                                    [Street]
Atlanta                            [City,] Georgia 30331              [ZIP Code] (herein "Property Address");

GEORGIA - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS

VMP -76N(GA) (0307).01
Page 1 of 4
VMP Mortgage Solutions, Inc. (800)521-7291

Form 3811
Amended 7/02
Initials:

Deed Book 44063 Pg  133

TO HAVE AND TO HOLD such property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Deed; and all of the foregoing, together with said property (or the leasehold estate if this Deed is on a leasehold) are hereinafter referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Deed.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior security deed, mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Deeds to Secure Debt; Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any security deed, mortgage, deed of trust or other security agreement with a lien which has priority over this Deed, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any security deed, mortgage, deed of trust or other security agreement with a lien which has priority over this Deed.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed is on a leasehold. If this Deed is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

Deed Book 44063 Pg 134

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any security deed, mortgage, deed of trust or other security agreement with a lien which has priority over this Deed.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed, but does not execute the Note, (a) is co-signing this Deed only to grant and convey that Borrower's interest in the Property to Lender under the terms of this Deed, (b) is not personally liable on the Note or under this Deed, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Deed. In the event that any provision or clause of this Deed or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Deed. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Deed.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Deed. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Deed without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies. Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed, including the covenants to pay when due any sums secured by this Deed, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed to be immediately due and payable without further demand and may invoke the power of sale herein granted (and Borrower hereby appoints Lender the agent and attorney-in-fact for Borrower to exercise said power of sale) and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.**

**If Lender invokes the power of sale, Lender shall mail a copy of a notice of sale to Borrower in the manner provided in paragraph 12 hereof and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Lender may determine. Lender or Lender's designee may purchase the Property at any sale.**

**Lender shall deliver to the purchaser Lender's deed to the Property in fee simple and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed; and (c) the excess, if any, to the person or persons legally entitled thereto. The power and agency hereby granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of said indebtedness as provided by law.**

**If the Property is sold pursuant to this paragraph 17, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at such sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.**





-76N(GA) (0307).01

Page 3 of 4

Initials: _____

Form 3811

Deed Book **44063** Pg **135**

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Deed or (ii) entry of a judgment enforcing this Deed if: (a) Borrower pays Lender all sums which would be then due under this Deed and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Deed, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed shall continue unimpaired. Upon such payment and cure by Borrower, this Deed and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignments of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Release.** Upon payment of all sums secured by this Deed, Lender shall cancel this Deed without charge to Borrower. Borrower shall pay all costs of recordation, if any.

**21. Waiver of Homestead.** Borrower hereby waives all right of homestead exemption in the Property.

**22. Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Deed and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**23. Deed to Secure Debt.** This conveyance is to be construed under the existing laws of the State of Georgia as a security deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

---

### REQUEST FOR NOTICE OF DEFAULT AND
### FORECLOSURE UNDER SUPERIOR SECURITY
### DEEDS, MORTGAGES OR DEEDS OF TRUST

---

Borrower and Lender request the holder of any security deed, mortgage, deed of trust or other encumbrance with a lien which has priority over this Security Deed to give Notice to Lender, at Lender's address set forth on page one of this Security Deed, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, BORROWER has executed and sealed this Deed.

_____(Seal)         Nov. 29, 2006        _____(Seal)
Kevin L Wasson          -Borrower                                                      -Borrower

_____(Seal)                                 _____(Seal)
                        -Borrower                                                      -Borrower

_____(Seal)                                 _____(Seal)
                        -Borrower                                                      -Borrower

_____(Seal)                                 _____(Seal)
                        -Borrower                                                      -Borrower

*[Sign Original Only]*

**STATE OF GEORGIA, FULTON**                    Fayette County ss:
Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Notary Public,                  Spalding        County
State of Georgia

Deed Book 44063 Pg   136

# PREPAYMENT PENALTY OPTION RIDER

This Prepayment Rider is made this    28th   day of    November, 2006        and is incorporated and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed of the same date (the "Security Instrument") given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to DHI MORTGAGE COMPANY, LTD.
(the "Lender") of the same date and covering the property described in the Security Instrument and located at 2851 Summit Parkway, Atlanta, GA 30331

(the                "Property").

[Property Address]

Additional Covenants. In addition to the covenants and agreements made in the Note, Borrower further covenants and agrees as follows:

I.Waiver Of Prepayment Right
Notwithstanding any provision contained in the Note to the contrary, Borrower expressly waives any right to prepay the Loan in whole or in part during the Prepayment Premium Period, as defined below except as expressly provided in this Rider.

II.Conditions For Prepayment: Prepayment Premium
I/We have the right to make payments of principal at any time before they are due. The payment of principal only is known as a "prepayment". When I/We make a prepayment, I/We will tell the Note Holder in writing that I/We am/are doing so. If, within the  first 36 months following the date of the Note and the Security Instrument I/We make a full prepayment or partial prepayment(s), I/We will at the same time pay to the Note Holder a prepayment charge. The prepayment charge will be equal to 1 % of any amount prepaid on the amount of any prepayment that when added to all other amounts prepaid during the twelve (12) month period preceding the date of any prepayment, exceeds twenty percent (20%) of the original principal amount of the Note.

III. OTHER UNSCHEDULED REDUCTIONS OF PRINCIPAL
For purposes of determining whether Borrower is making a qualified prepayment, Lender may consider any unscheduled reduction in the principal balance of the Loan during the Prepayment Premium Period to be a prepayment and, therefore, subject to the payment of a Prepayment Premium in accordance with the provisions of Section II above. An unscheduled reduction in the principal balance of the Loan may include or result from, without limitation, any or all of the following:
    a.      Any acceleration by Lender of the unpaid principal balance of the Note pursuant to the acceleration provisions contained in the Note and/or the Instrument, upon default by Borrower Notwithstanding the foregoing Lender shall not assess a Prepayment Premium in connection with the enforcement of Lender's right to accelerate the Loan upon the sale of the Property.
    b.      Any satisfaction or release of the Instrument by foreclosure (whether by power of sale or by judicial proceeding) deed in lieu of foreclosure, or any other means.

99PPRDR1.UFF 3/16/05                    Page 1 of 2

Deed Book **44063** Pg   **137**

Notwithstanding the foregoing, no Prepayment Premium shall be due with respect to any prepayment or other unscheduled reduction in the principal balance of the Loan resulting from the exercise of Lenders option to apply insurance proceeds or condemnation awards to the unpaid principal balance of the Loan pursuant to the terms of the Instrument. In addition, if this Loan is sold to the Federal National Mortgage Association ("FNMA") or the Federal Home Loan Mortgage Corporation ("FHLMC"), no Prepayment Premium shall be due with respect to any prepayment or other unscheduled reduction in the principal balance of the Loan which occurs during the period of FNMA's or FHLMC's ownership of this Loan. Please sign your name exactly as it appears below:

_____ (Seal)     Nov. 29, 2006     _____ (Seal)
Kevin L Wasson                  -Borrower-                                                    -Borrower-

_____ (Seal)                        _____ (Seal)
                                -Borrower-                                                    -Borrower-

_____ (Seal)                        _____ (Seal)
                                -Borrower-                                                    -Borrower-

_____ (Seal)                        _____ (Seal)
                                -Borrower-                                                    -Borrower-

_____ (Seal)                        _____ (Seal)
                                -Borrower-                                                    -Borrower-

*[Sign Original Only]*

99PPRDR2.UFF 3/05                       Page 2 of 2

Deed Book 44063 Pg  138

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 28th                 day of November, 2006                        , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to DHI MORTGAGE COMPANY, LTD.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

2851 Summit Parkway, Atlanta, GA 30331

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in Covenants, Conditions and Restrictions

(the "Declaration"). The Property is a part of a planned unit development known as

SUMMIT AT STONEWALL TELL ROAD

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the: (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**MULTISTATE PUD RIDER** - Single Family/Second Mortgage                          3/99
Page 1 of 3                    Initials: _____
VMP-207R (0411)        VMP Mortgage Solutions, Inc. (800)521-7291

Deed Book **44063** Pg   **139**

**B. Hazard Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Uniform Covenant 2 for the monthly payment to Lender of the yearly premium installments for hazard insurance on the Property; and (ii) Borrower's obligation under Uniform Covenant 5 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage provided by the master or blanket policy.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Uniform Covenant 9.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

Initials: _____

VMP-207R (0411)                     Page 2 of 3                     3/99

Deed Book 44063 Pg   140

**F. Remedies. If** Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)       *Nov. 29, 2006* _____ (Seal)
Kevin L Wasson            -Borrower                              -Borrower


_____ (Seal)       _____ (Seal)
                          -Borrower                              -Borrower


_____ (Seal)       _____ (Seal)
                          -Borrower                              -Borrower


_____ (Seal)       _____ (Seal)
                          -Borrower                              -Borrower


VMP®-207R (0411)                Page 3 of 3                       3/99

Deed Book **44063** Pg   **141**

# WAIVER OF BORROWER'S RIGHTS RIDER

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF;   ·(3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, Sealed and delivered in the presence of:

_____ (Seal)
Kevin L Wasson                  -Grantor

_____ (Seal)
                                -Grantor

_____
Notary Public

_____ (Seal)
                                -Grantor

_____ (Seal)
                                -Grantor

VMP-1030(GA) (9410).02     10/94
® VMP Mortgage Solutions (800)521-7291

GEORGIA

Deed Book 44063 Pg 142
Juanita Hicks
Clerk of Superior Court
Fulton County, Georgia

| Grantor: | Kevin L. Wasson |
| Lender: | DHI Mortgage Company, LTD. |
| Date of Security Deed: | November 29, 2006 |

## WAIVER OF BORROWER'S RIGHTS

By execution of this paragraph, Grantor expressly: (1) acknowledges the right to accelerate the debt and the power of attorney given herein to Lender to sell the premises by nonjudicial foreclosure upon default by Grantor without any judicial hearing and without any notice other than such notice as is required to be given under the provisions hereof; (2) waives any and all rights which Grantor may have under the fifth and fourteenth amendments to the Constitution of the United States, the various provisions of the constitution for the several states, or by reason of any other applicable law to notice and to judicial hearing prior to the exercise by Lender of any right or remedy herein provided to Lender, except such notice as is specifically required to be provided hereof; (3) acknowledges that Grantor has read this deed and specifically this paragraph and any and all questions regarding the legal effect of said deed and its provisions have been explained fully to Grantor and Grantor has been afforded an opportunity to consult with counsel of Grantor's choice prior to executing this deed; (4) acknowledges that all waivers of the aforesaid rights of Grantor have been made knowingly, intentionally and willingly by Grantor as part of a bargained for loan transaction; and (5) agrees that the provisions hereof are incorporated into and made a part of the Security Deed.

Read and agreed by Grantor:

Signed, sealed and delivered in the presence of:

_____
Witness

_____
Notary Public
My Commission Expires: 10-31-09

Borrower(s)

_____
Kevin L. Wasson

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Security Deed and "Waiver of Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Security Deed and particularly the provisions, thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under the power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Security Deed and "Waiver of Borrower's Rights".

Based on said review with and explanation to the Borrower(s) it is my opinion that borrower(s) knowingly, intentionally and willingly executed the Waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on the date
set forth above.

_____
Notary Public

Morris|Hardwick|Schneider, LLC

_____
Closing Attorney

## FORECLOSURE CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

_____
Kevin L. Wasson

Clo_Ga_Waiver of Borrower's Rights & CAA

# EXHIBIT "B"

Deed Book 59684 Page 679
Filed and Recorded 2/8/2019 11:59:00 AM
2019-0106513
Cathelene Robinson
Clerk of Superior Court
Fulton County, GA
Participant IDs: ████████

Prepared by and When Recorded mail to:
ARCPE HOLDING LLC
1900 Sunset Harbor Dr. The Annex-2nd Floor
Miami Beach, FL 33139
Loan #: ████

CORPORATE ASSIGNMENT OF DEED

Fulton County, Georgia

Date of Assignment:    *February 8, 2019*

| | |
|---|---|
| Assignor: | 19 Asset Management Holdings, LLC |
| | 1900 Sunset Harbor Dr., the Annex-2nd Floor, Miami Beach, FL 33139 |
| Assignee: | ARCPE HOLDING LLC |
| | 1900 Sunset Harbor Dr., the Annex-2nd Floor, Miami Beach, FL 33139 |
| Executed By: | Kevin L Wasson, an unmarried man |
| To: | Mortgage Electronic Registration Systems, Inc. (MERS) as nominee for DHI Mortgage Company, LTD |
| Date of Mortgage: | 11/28/2006 |
| Recorded: | 12/13/2006 in Official Records, as Instrument No.: 2006-0414311, Book/Reel/Liber: 44063 Page/Folio: 132 in the County of Fulton, State of Georgia |
| Legal Description: | See attached "EXHIBIT A" |
| Property Address: | 2851 Summit Parkway, Atlanta, GA 30331 |
| APN: | 14F-0140- LL-211-0 |

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths Dollars and other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is hereby acknowledged, said Assignor hereby assigns unto the above-named Assignee, the said Deed together with the Note or other evidence of indebtedness (the "Note"), said Note having an original principal sum of **$43,937.00** with interest, secured thereby, together with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisions therein contained, and the said Assignee, the Assignor's interest under the Deed.

TO HAVE AND TO HOLD the said Deed and Note, and also the said property unto the said Assignee forever, subject to the terms contained in said presents the day and year first above written.

On *February 8, 2019*                                    **19 Asset Management Holdings, LLC**

Witness: _____
By: _____                                    _____
Print Name: *PAUL RAMOS*                                John Olsen, as Manager

Witness: _____
By: _____
Print Name: *DON DOUMET*

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

On *February 8, 2019* before me, *Paul V. Ramos*, a Notary Public in and for the County of Miami Dade, State of Florida, personally appeared John Olsen, as Manager of **19 Asset Management Holdings, LLC,** personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, on behalf of the Corporation.

```
┌──────────────────────────────┐
│        PAUL VIRGILIO RAMOS    │
│     MY COMMISSION # GG 275295 │
│      EXPIRES: November 8, 2022│
│  Bonded Thru Notary Public Underwriters │
└──────────────────────────────┘
```
Notary Public   *Paul V. Ramos*

Deed Book 59684 Page 680
Cathelene Robinson
Clerk of Superior Court

EXHIBIT A
**LEGAL DESCRIPTION**

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 140 OF THE 14FF DISTRICT, FULTON COUNTY, GEORGIA, BEING LOT 188, BLOCK D, PHASE 3, POD C OF SUMMIT AT STONEWALL TELL ROAD SUBDIVISION, AS PER PLAT RECORDED IN PLAT BOOK 288, PAGE 64-69. FULTON COUNTY, GEORGIA RECORDS, WHICH RECORDED PLAT IS INCORPORATED HEREIN BY REFERENCE AND MADE A PART OF THIS DESCRIPTION.