## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| KEVIN WASSON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION FILE NUMBER** |
| | ) | **1:21-cv-04805** |
| ARCPE HOLDING, LLC, SERVIS | ) | |
| ONE, INC. and John Does 1-3, | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## PLAINTIFF KEVIN WASSON'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT AND INCORPORATED BRIEF IN SUPPORT THEREOF

**COMES NOW,** Kevin Wasson, Plaintiff in the above-styled action, and responds to Defendants' Motion to Dismiss Amended Complaint [Doc. 18] and Incorporated Brief in Support Thereof, showing the Court as follows:

### a. Introduction.

Defendants' Motion to Dismiss Mr. Wasson's Amended Complaint should be denied in its entirety.

Specifically, as discussed below, Mr. Wasson's Tortious Interference claim (Count I) survives because:

i)     His Amended Complaint demonstrates that BSI (either acting alone or as agent of ARCPE) made

1

misrepresentations of fact concerning its ability to provide the loan payoff amount, and Georgia law does not require the presence of actual fraud to render an interference improper;[1]

ii)   Defendants were strangers to the contract since they derived no direct financial benefit from the sale of the property; and

iii)   Mr. Wasson was damaged in the amount of the lost benefit of his bargain under the contract.

Mr. Wasson's claim for Breach of Contract relating to the Prepayment penalty Option Rider (Count II) survives because:

i)   Taking the allegations of the Amended Complaint and its exhibits as true and viewing them in a light most favorable to Mr. Wasson, it is obvious that the Rider required ARCPE to accept prepayment if the Rider's conditions were met – otherwise the document was essentially pointless.

Count III of Mr. Wasson's Amended Complaint for Violation of O.C.G.A. § 7-6A-3 survives because:

i)   It is not barred by the statute of limitations, as the salient provision contains the permissive language "may," and a contrary reading would render the statute pointless.

---

[1]   Defendants take issue with Mr. Wasson pleading alternative facts in his Amended Complaint that BSI may or may not have been an agent of ARCPE.  Fed. R. Civ. P. 8 expressly allows alternative theories to be advanced and for a plaintiff to plead in the alternative.

Count IV of Mr. Wasson's Amended Complaint for breach of the settlement agreement survives because:

> i)   The agreement is founded upon valuable consideration –
> i.e. that ARCPE would receive a lump sum payment of a
> lesser amount sooner than the installment payments
> otherwise would have been delivered.

Count V of Mr. Wasson's Amended Complaint for attorneys' fees and expenses of litigation survives because his other substantive claims should be allowed to proceed, and this claim is ancillary.

**b.  Standard of Review.**

As this Court has previously noted:

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); Fed.R.Civ.P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citations and quotations omitted). In ruling on a motion to dismiss, the court must accept factual allegations as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082, 106 S.Ct. 851, 88 L.Ed.2d 892 (1986). Under notice

pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (citing *Twombly*, 550 U.S. at 555).

*Econ-O-Check Corp. v. Strategycorps*, No. 1:19-cv-3742, 2020 U.S. Dist. LEXIS 256375, at *4 (N.D. Ga. Mar. 23, 2020).

As discussed below, taking the allegations in Mr. Wasson's Complaint as true, it is clear that Mr. Wasson's Complaint plausibly states claims for tortious interference, breach of contract, and negligence against Defendants.  Accordingly, the Court should deny Defendants' Motion to Dismiss.

### c.  Tortious Interference with Contract.

   i)    <u>Mr. Wasson's Amended Complaint demonstrates that BSI (either acting alone or as agent of ARCPE) made misrepresentations of fact concerning its ability to provide the loan payoff amount, and Georgia law does not require the presence of actual fraud to render an interference improper.</u>

Defendants misstate the requirements to meet the "improper action or wrongful conduct" element of tortious interference.  Specifically, Defendants assert that Mr. Wasson must essentially state a claim for fraud in order to state a claim for tortious interference.  That is not what the law says.

To quote Defendants' Brief, "The phrase 'improper action or wrongful conduct' ' generally involves predatory **tactics such as** physical violence, fraud **or**

**misrepresentation**, defamation, . . . ."  [Doc. 18-1, at page 9 (quoting *Kirkland v. Tamplin*, 645 S.E.2d 653, 656 (Ga. Ct. App. 2007)] (emphasis added).

Therefore, it is clear that the "improper action" requirement does <u>not</u> require a separate cause of action to accompany the tortious interference claim.  Rather, proof of a "tactic" – not a cause of action – "such as . . . misrepresentation" is sufficient.

Notably, Defendants are unable to cite to even a single Georgia case linking the requirement of a separate cause of action for fraud to a tortious interference claim.  That is because none exist.  Instead, Defendants rely upon New York law to support their misguided legal conclusion.

Here, Mr. Wasson alleges Defendants engaged in misrepresentation.  *See* [Doc. 17, ⁋⁋ 26, 27, 28, and 30].  Specifically, Mr. Wasson alleges that "BSI told the closing attorney that i) the payoff amount had been sent via email, ii) the payoff amount had been faxed, iii) no documents could be provided to the closing attorney, and iv) the request for payoff amount was rejected because "it was not hand written by the customer."  Doc. 17, ⁋ 26.

Under Georgia law, this is sufficient for purposes of stating a claim for tortious interference.  *See Kirkland*, *supra*.

ii)    <u>Defendants were strangers to the contract since they derived no direct financial benefit from the sale of the property</u>.

As an initial matter, Defendants no longer attempt to argue that BSI was not a stranger to the contract, limiting its argument on this point to one sentence.  *See* Doc. 18-1, page 13 ("BSI was also acting with privilege to the extent that it was acting as the agent of ARCPE within the scope of its duties as agent.").  Therefore, the analysis is focused primarily on ARCPE.

A person is a stranger to a contract if he derives no *direct* economic benefit from it.  The word "direct"—which exists consistently in the case law when defining a "stranger"—is important.  ARCPE would not have received a direct benefit from the consummation of the contract.  Accordingly, it is a stranger.

Based off the facts as pled, the only person to receive a direct benefit under the Purchase and Sale Agreement was Mr. Wasson, as he was to be paid the purchase price under the contract.  Beyond this, ARCPE would merely receive the benefit of having its loan satisfied sooner rather than later.  Its loan would have been paid off from the proceeds in the exact same sum as it would have over the course of an amortization schedule.  Its economic position with respect to Mr. Wasson would not materially change if the loan was paid off early, as it maintained security on its loan and future rights to regular payments.  In other words, ARCPE's net economic benefit with respect to Mr. Wasson's loan would remain

the same, regardless of whether the sale closed or not.  At most, it would receive an *indirect* benefit by receiving an early payoff, which is insufficient to render the stranger doctrine applicable.

Finally, Defendants' reliance upon *Brooks v. Branch Banking and Trust Co.*, 107 F. Supp. 3d 1290 (N.D. Ga. 2015) is misplaced, as that case is distinguishable.

First, in *Brooks*, there was a contract between the parties that allowed for lender's actual receipt of rent payments.  Specifically, the rider stated:

> *Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable.* Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's Agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to paragraph 21 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. *This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.*

*Id*. at 1301 (emphasis in original).

This language created a contingency interest in the rent – i.e. that if the debtor defaulted, lender could begin collecting rent.

This differs from the above-styled action in that ARCPE has pointed to nothing in the record demonstrating an actual right to receive the proceeds of the sale to the third-party.  Yes, ARCPE would be paid over time in incremental

7

payments, and yes, ARCPE may have had priority in the property, but there is no document ARCPE can point to in the record to show the sort of contingency interest which existed in *Brooks*.

      iii)   <u>Mr. Wasson was damaged in the amount of the lost benefit of his bargain under the contract.</u>

Defendants' argument regarding Mr. Wasson's damages also falls short in that it assumes his damages equal his equity in the house. That is inaccurate. The fact that Mr. Wasson would be able to pay off his obligation would serve as a huge financial benefit to him, and would result in Mr. Wasson being unburdened of a significant amount of debt. Now, because of Defendants' actions, he still bears that burden. As a result, he has been damaged in the amount of the sale price set forth in the Purchase and Sale Agreement – the benefit of his bargain.

**d. Breach of the Prepayment Penalty Option Rider.**

Defendants completely misconstrue the provisions of the Rider. On its face, it plainly and unambiguously says that:

"**<u>I/we have the right to make payments of principal at any time before they are due</u>**."

[Doc. 17, Ex. B, Section II, First Sentence].

Stemming from this, ARCPE was required to "provide such cooperation as is required for the other party's performance" of its rights and obligations under the contract. *Camp v. Peetluk*, 262 Ga. App. 345, 350 (2003).

Defendants employ mental gymnastics to reach the flawed conclusion that this sentence can only mean "that the Plaintiff must pay a penalty if he prepays any amount of the principal before it is due during the first 36 months of the loan term." *See* [Doc. 18-1, page 16].

If Defendants' argument is to be believed, then this sentence has no meaning and is pointless.  Such a result is absolutely contrary to Georgia law, as "it is a well-established rule of contract construction that a court should avoid an interpretation of a contract which renders any of its terms meaningless or mere surplusage." *Garrett v. S. Health Corp. of Ellijay, Inc.*, 320 Ga. App. 176, 183 (2013).

Furthermore, the Court must consider whether the implied term that ARCPE has a duty to accept prepayments from Mr. Wasson is inconsistent with the sentence stating that Mr. Wasson has "the right to make payments of principal at any time before they are due."  Clearly it is not.

It is also worth mentioning the sole case which Defendants rely upon to support this argument (*Higginbottom v. Thiele Kaolin Co.*) was decided from a

summary judgment ruling – not a motion to dismiss.  Therefore, the Court's analysis focused on the intent of the parties.

Defendants' argument is more akin to a summary judgment-type argument – i.e. did the parties intend for Mr. Wasson to be allowed to prepay, or does this documents simply impose penalties?  Of course, "[t]he cardinal rule of contract construction is to determine the intent of the parties as expressed within the four corners of the written agreement." *Yargus v. Smith*, 254 Ga. App. 338, 341 (2002).

This issue is not something that should be decided on a motion to dismiss. Rather, this is a question which must be resolved either through the statutory rules of contract interpretation or a trial.

Defendants' argument regarding Mr. Wasson's lack of damages is also flawed.  Within the framework of the facts alleged, Mr. Wasson may recover consequential damages such as ongoing interest payments (see O.C.G.A. § 13-6-8), and, at the very least, nominal damages (see O.C.G.A. § 13-6-6).  Further, there is a logical nexus between ARCPE's breach of the Rider in failing to allow prepayment, and the termination of Mr. Wasson's contract to sell his home. Therefore, Mr. Wasson has clearly been damaged and has stated a claim for breach of contract.

### e.  Violation of O.C.G.A. § 7-6A-3.

It is telling that Defendants fail to actually quote the statute which they claim bars Mr. Wasson's claims.  It provides:

**"(h)** An action under this chapter **may** be brought within five years after the date of the first scheduled payment by the borrower under the home loan." O.C.G.A. § 7-6A-7(h) (emphasis added).

This language is permissive, not restrictive.  *Compare id. with* O.C.G.A. §§ 9-3-20 (actions on foreign judgments), 9-3-30 (actions for trespass), and 9-3-31 (actions for injuries to personalty), all of which define the statute of limitations by saying "shall."

In fact, there is not a single statute in Article 2, Chapter 3, Title 9 of the Georgia Code (which outlines various specific periods of limitations) that uses the word "may" as § 7-6A-7(h) does.

Therefore, based off plain rules of statutory construction, § 7-6A-7(h) does not impose a limitation.  Rather, it dictates that a claimant "may" commence an action under the Chapter during the first five years.

Defendants cite to *Whiddon v. Specialized Loan Servicing, LLC*, No. 2:16-cv-0283-RWS, 2017 U.S. Dist. LEXIS 226417 (N.D. Ga. Sep. 26, 2017) to support their argument that the statute imposes a five-year limitation.  However, the Court

in *Whiddon* actually misquoted the statute and said "A claim under the GFLA must be brought 'within five years after the first payment due by the borrower under the home loan.'" *Id.* at *4.

With all respect to that Court, that is simply not what the statute says. The words "must" or "shall" do not appear. Therefore, Mr. Wasson's claim is not barred.

Furthermore, Defendants' position would render O.C.G.A. §7-6A-3(4) meaningless in situations such as these. The statute clearly says that when a homeowner requests a payoff balance from his creditor or loan servicer, the "Payoff balances shall be provided within a reasonable time but in any event no more than five business days after the request."

Taking Defendants' argument to its logical conclusion, what happens in a case like this when a creditor fails to provide the payoff balance after five years from the first payment due date? Again, the result nullifies § 7-6A-3(4), which is a result the Court should not reach.

In fact, *Gilbert v. Richardson*, 264 Ga. 744, 747-78 (1994) expressly disapproves of such result. "It is a basic rule of construction that a statute or constitutional provision should be construed to make all its parts harmonize and to give a sensible and intelligent effect to each part, as it is not presumed that the

legislature intended that any part would be without meaning." *Id.* (internal quotations omitted).

Finally, damages allowable under O.C.G.A. § 7-6A-7(a) are stated within the framework of the Amended Complaint.  First, as a result of Defendants' failure to provide the loan payoff amount, the sale of the property was not able to close and Mr. Wasson incurred damages in the amount of the contract price.  Those are "actual damages" within the meaning of Subsection (a)(1).   Further, the statute also allows for an award of punitive damages and attorneys' fees.

Given this, Mr. Wasson's claim is not barred and should survive Defendants' Motion to Dismiss.

### f.  Breach of the Settlement Agreement.

Consider the following scenario.  A person executes a promissory note to repay a certain amount of money in installment payments over time.  The person defaults, and the holder of the note sues.

Once in litigation, the parties are ordered to mediation.  They settle.  Then, after they reach an agreement, the parties reduce their settlement to a written Settlement Agreement.

Pursuant to the terms of the Settlement Agreement, the defendant is to pay the plaintiff a lesser amount than what the plaintiff sought in its Complaint in one

lump sum. Unfortunately, the defendant falls on hard times and is unable to make the lump sum payment, thus breaching the Settlement Agreement.

Applying ARCPE's rationale to this hypothetical, it would have the Court believe that the Settlement Agreement is unenforceable.

Georgia law specifically contemplates that an agreement to satisfy an existing debt with a lesser sum can serve as a valid, binding, and enforceable contract. *See generally* O.C.G.A. § 13-4-103(a). To this end, ARCPE's agreement to accept $20,000 in satisfaction of its loan amounts to a settlement of a larger debt.

In Georgia, "the law favors compromise, and when parties have entered into a definite, certain, and unambiguous agreement to settle, it should be enforced." *Johnson v. DeKalb Cty.*, 314 Ga. App. 790, 793 (2012) (internal quotations omitted); *see also Kothari v. Tessfaye*, 318 Ga. App. 289, 289 (2012):

> "[I]t is the paramount public policy of this State that courts will not lightly interfere with the freedom of parties to contract on any subject matter, on any terms, unless prohibited by statute or public policy, and injury to the public interest clearly appears." (Footnote omitted.) *Bryan v. MBC Partners*, 246 Ga. App. 549, 552 (3) (541 SE2d 124) (2000). In fact, "settlement agreements are highly favored under the law and will be upheld whenever possible as a means of resolving uncertainties and preventing [or settling] lawsuits." (Citation omitted.) *Schafer Properties v. Tara State Bank*, 220 Ga. App. 378, 380-381 (1) (469 SE2d 743) (1996). See also *Bradley v. Bradley*, 225 Ga. App. 530, 533

14

(484 SE2d 280) (1997) ("A contract of compromise is binding on the parties, and neither party to a compromise has power to disregard it if it was full and final between them.") (citation and punctuation omitted).

While settlements are preferably memorialized in formal writings, the law is very clear that letters or documents, such as those typically prepared by attorneys in negotiations, "which memorialize the terms of the agreement reached will suffice." *Brumbelow v. N. Propane Gas Co.*, 251 Ga. 674, 676 (1983). "An offer may be accepted . . . either by a promise to do the thing contemplated therein, or by the actual doing of the thing." *Herring v. Dunning*, 213 Ga. App. 695, 699 (1994).

The face of Mr. Wasson's Complaint establishes the requisite elements of a contract to settle the debt. ARCPE offered to settle a $43,937.00 debt for $20,000. Complaint, ¶ 39. Mr. Wasson accepted the offer on December 17, 2018. Complaint, ¶ 40. The consideration was payment in an immediate lump sum payment rather than installment payments over time. Complaint, ¶ 39. Thus, a contract was formed and ARCPE is bound.

An almost identical situation was considered by the Georgia Supreme Court in *Codner v. Siegel*, 246 Ga. 368 (1980). In *Codner*, the plaintiff asserted that its creditor had agreed to settle a debt for a lesser sum. Specifically:

> Siegel contends that on June 8, Codner orally agreed to accept $ 18,000 as full payment of a debt of more than $ 31,000 provided payment was made within 60 days. He contends that on June 12, Codner made the same agreement in writing only he added the requirement that Siegel

15

> either obtain Codner's release from a first mortgage or agree to indemnify him on the mortgage. Siegel contends that he partially performed the agreement of June 12th by arranging, before Codner withdrew his offer, for Codner to be released from the first mortgage.

*Id.* at 368-69.

The Supreme Court reasoned that a central issue in the case was whether the agreement to accept a lesser sum was supported by new consideration. *See* O.C.G.A. § 13-4-103(a). Analyzing this, the Supreme Court stated that "[t]he execution of a new agreement may itself amount to a satisfaction if the new promise is founded on a new consideration." *Id.* at 369. Elaborating further, and critically to this case, the Court stated that "[a] new consideration, although slight, will be sufficient to support the new agreement. **A promise to pay a debt before it is due in a smaller sum than owed can be the necessary additional consideration**." *Id.* (emphasis added).

Here, Mr. Wasson agreed to pay a lesser sum before it was due—i.e. $20,000 in a lump sum, rather than continued amortized payments. According to *Codner*, this is sufficient consideration to require ARCPE to accept less than the full debt and create a binding contract.

Given this, Mr. Wasson's Complaint alleges the existence of a valid contract to settle the debt for $20,000, which ARCPE clearly breached. Therefore, ARCPE's Motion to Dismiss should be denied.

16

### g.  Attorneys' fees and Expenses of Litigation.

Awards of attorney fees are derivative of underlying claims, and accordingly Mr. Wasson's right to recover these damages turns on his ability to recover on his other substantive claims.  *Stephen A. Wheat Tr. v. Sparks*, 325 Ga. App. 673, 682 (2014) ("An award of attorney fees, costs, or punitive damages is derivative of a plaintiff's substantive claims.").  Therefore, if Mr. Wasson's substantive claims survive Defendants' Motion to Dismiss, his claim for attorneys' fees must also survive.

**WHEREFORE,** Mr. Wasson respectfully requests the Court deny Defendants' Motion to Dismiss his Amended Complaint.

Respectfully submitted, this 14th day of March, 2022.

**KING, YAKLIN & WIKLINS, LLP**

/s/ Collin D. Hatcher
Collin D. Hatcher
Georgia Bar No: 926248
*Attorney for Plaintiff*

192 Anderson Street
Suite 125
Marietta, Georgia 30060
(770) 424-9235 (telephone)
(770) 424-9239 (facsimile)
chatcher@kingyaklin.com

## FONT CERTIFICATION

The undersigned counsel hereby certifies that the within and foregoing was prepared using Times New Roman, 14-point font in accordance with LR 5.1(B).

This 14th day of March, 2022.

**KING, YAKLIN & WIKLINS, LLP**

/s/ Collin D. Hatcher
Collin D. Hatcher
Georgia Bar No: 926248
*Attorney for Plaintiff*

192 Anderson Street
Suite 125
Marietta, Georgia 30060
(770) 424-9235 (telephone)
(770) 424-9239 (facsimile)
chatcher@kingyaklin.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have on this day filed the within and foregoing via

CM/ECF, which will electronically serve notice on all parties.

This 14th day of March, 2022.

KING, YAKLIN & WIKLINS, LLP

/s/ Collin D. Hatcher
Collin D. Hatcher
Georgia Bar No: 926248
*Attorney for Plaintiff*

192 Anderson Street
Suite 125
Marietta, Georgia 30060
(770) 424-9235 (telephone)
(770) 424-9239 (facsimile)
chatcher@kingyaklin.com

19