**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

KEVIN WASSON,

      Plaintiff,

v.

ARCPE HOLDING, LLC, SERVIS ONE,
INC. d/b/a BSI FINANCIAL SERVICES,
and John Does 1-3,

      Defendants.

Case No. 1:21-cv-04805-TWT

## DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

COME NOW, ARCPE Holding, LLC ("ARCPE") and Servis One, Inc. d/b/a BSI Financial Services ("BSI") (ARCPE and BSI are sometimes referred to collectively as "Defendants"), and file this Reply to the Plaintiff's Response [Doc. 19] to the Defendants' Motion to Dismiss the Amended Complaint [Doc. 18], respectfully showing this Honorable Court as follows:

1

## ARGUMENT AND CITATION OF AUTHORITY

**A.   THE PLAINTIFF HAS FAILED TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT**

The Defendants moved to dismiss Count I of the Complaint – for tortious interference with contract – on several grounds. First, the Defendants argued that there were insufficient allegations of wrongful conduct to support the claim. [Doc. 18-1] at pp. 8-11. Second, it was argued that ARCPE was acting with privilege. *Id.* at pp. 11-13. And third, the Defendants said that the Plaintiff failed to plausibly show that he was damaged. *Id.* at pp. 13-14. The Plaintiff responded to each argument.

*1.  The Plaintiff has failed to show wrongful conduct*

As the Defendants noted in their initial brief, a plaintiff cannot state a claim for tortious interference with contract unless they at least show "improper action or wrongful conduct" and that this "generally involves predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions." *Kirkland v. Tamplin*, 645 S.E.2d 653, 656 (Ga. Ct. App. 2007) (citations omitted). In other words, "such wrongful conduct must amount to a crime or an independent tort . . . ." *Smith v. Meridian Techs., Inc.*, 86 A.D.3d 557, 560, 927 N.Y.S.2d 141, 144 (2011) (citation omitted). Further, the Defendants argued that any claim based upon fraud

or misrepresentation must be pleaded with particularity and the Plaintiff did not do so. *See* [Doc. 18-1] at pp. 10-11.

In response, the Plaintiff first takes issue with the Defendants' citation to *Smith* – a New York case – for the proposition that the "conduct must amount to a crime or an independent tort . . . ." The Defendants acknowledge that *Smith* is not binding on this Court, but as the Defendants noted in their brief, New York has the exact same requirement as Georgia for wrongful conduct. *See* [Doc. 18-1] at p. 9 n.2. Since there is no known Georgia case law that delves deeper into the "improper action or wrongful conduct" element (and the Plaintiff cited to none), *Smith* is certainly relevant.

Not only is *Smith* relevant, but it makes perfect sense. Here, the Plaintiff is claiming that misrepresentation serves as the "wrongful conduct" underpinning the tortious interference claim. *See* [Doc. 19] at p. 5. The Plaintiff claims in his Response that the misrepresentation must only be a "tactic" and "not a cause of action," *id.*, but he never elaborates or provides any support for this statement. Fraud and misrepresentation have clear legal definitions in Georgia, *see* O.C.G.A. §§ 23-2-51, 23-2-52, and there is no plausible argument that a "tactic" of fraud or misrepresentation need not meet the actual definition of fraud or misrepresentation. Otherwise, it would not be fraud or misrepresentation. The Plaintiff does not dispute

3

the Defendants' argument in their initial brief that they failed to plead facts showing the elements of fraud or misrepresentation have been met.

Even if the Plaintiff was correct that the alleged conduct need not satisfy all elements of an independent cause of action, the tortious interference claim still must be pleaded with particularity as required by Fed. R. Civ. P. 9(b). As noted in the Defendants' initial brief, it was not. *See* [Doc. 18-1] at pp. 10-11. All claims based on an underlying fraud or misrepresentation must be pleaded with particularity even if the overall claim is not "fraud" or "misrepresentation." *See, e.g., Liquidation Comm'n of Banco Int'l, S.A. v. Renta*, 530 F.3d 1339, 1355 (11th Cir. 2008); *see also Surgenex, LLC v. Predictive Therapeutics, LLC*, No. 2:19-cv-295-RJS-DAO, 2020 WL 8514831, at *2 (D. Utah July 17, 2020) (citation omitted) (tortious interference claim based on misrepresentation must be pleaded with particularity). The Plaintiff notably did not respond to the Defendants' arguments that Rule 9(b) applies and that he did not comply. Count I should be dismissed.

### 1. ARCPE was acting with privilege

Next, it was argued that ARCPE would have benefitted from the closing of the sale because its loan would have been paid in full. *See* [Doc. 18-1] at pp. 11-13. Under Georgia law, one cannot be liable for tortious interference with contract unless they were a stranger to the contract. "Those who have a direct economic

4

interest in or would benefit from a contract with which they are alleged to have interfered (even though not intended third-party beneficiaries of the contract) are not strangers to the contract and cannot have tortiously interfered." *Mabra v. SF, Inc.*, 316 Ga. App. 62, 65, 728 S.E.2d 737, 740 (2012).

In his response brief, the Plaintiff first claims – without any citation to authority – that "[a] person is a stranger to a contract if he derives no *direct* benefit from it" and that "[t]he word 'direct' – which exists consistently in the case law when defining a 'stranger' – is important." [Doc. 19] at p. 6. He then says that ARCPE "would not have received a direct benefit from the consummation of the contract." *Id.* The Plaintiff is wrong.

The case law says one is not a stranger if they would derive a "direct economic interest **_or_** would benefit from [the] contract . . . ." *Mabra*, 316 Ga. App. at 65 (emphasis added). "Direct" modifies "economic interest," not "benefit." Thus, it follows that the range of entities or people who are not strangers is far broader than the Plaintiff suggests. There is no doubt that ARCPE would benefit from having its loan paid in full. The Plaintiff tries to argue that ARCPE's "economic position with respect to Mr. Wasson would not materially change if the loan was paid off early, as it maintained security on its loan and future rights to regular payments." [Doc. 19] at p. 6. But this is far from certain. For example, if the property value falls to a point

5

where the loan is undersecured and the Plaintiff defaults, ARCPE would likely have to foreclose and recoup less than the full amount of the debt. Full repayment is never guaranteed, and it is of immense benefit to ARCPE if it can get its loan paid in full through a sale of the property. The Plaintiff is wrong that ARCPE would not benefit from the sale being consummated and Count I should be dismissed.

2. *The Plaintiff has failed to prove damages*

Lastly, the Defendants argued that the Plaintiff failed to plead facts showing he was damaged by any tortious interference. *See* [Doc. 18-1] at pp. 13-15. In the Amended Complaint, the Plaintiff alleged that he was damaged to the tune of $282,000.00, which was the contract price. *See* [Doc. 17] at ¶ 10. The Defendants argued that this was implausible because the Plaintiff never stood to benefit this amount since he had to satisfy at least one mortgage loan on the property, and that since he still owns the property, the Plaintiff could potentially benefit from the contract falling though since the value may have increased. *See* [Doc. 18-1] at pp. 14-15.

The Plaintiff responded with a skeletal argument, stating only that "[t]he fact that Mr. Wasson would be able to pay off his obligation would serve as a huge financial benefit to him, and would result in Mr. Wasson being unburdened of a significant amount of debt." [Doc. 19] at p. 8. Not only are there no facts in the

Amended Complaint to support this assertion, but it does not make sense. Debt is not a "burden" if it was used to buy and is secured by real estate that has a sufficient value to pay off the debt upon a sale. In the bankruptcy context, this is known as a "contemporaneous exchange for new value" that results in equal benefits to both sides. *See Gen. Time Corp. v. Schneider Atlanta, L.P. (In re Gen. Time Corp.)*, 328 B.R. 243, 246 (Bankr. N.D. Ga. 2005).

The Debtor here is seeking an improper windfall. He wants a judgment for $282,000.00 while keeping the property that is presumably worth at least this much, if not more. This does not fit into the category of recoverable damages for tortious interference, *see* [Doc. 18-1] at pp. 13-14, and the Plaintiff has failed to state a claim. Count I must be dismissed.

**B.    THE PLAINTIFF HAS FAILED TO STATE A CLAIM FOR BREACH OF CONTRACT IN COUNT II**

In Count II, the Plaintiff claims that ARCPE violated the Prepayment Rider to the Security Deed by "prevent[ing] Mr. Wasson from exercising his 'right to make payments of principal at any time before they are due.'" [Doc. 17] at ¶ 45. ARCPE moved to dismiss this claim on the basis that ARCPE did not breach any duty found in the Prepayment Rider and that the Plaintiff failed to plead facts showing he was damaged by any breach.

In response, the Plaintiff first puts the cart before the horse and claims that "ARCPE was required 'to provide such cooperation as is required for the other party's performance' of its rights and obligations under the contract." [Doc. 19] at p. 9 (quoting *Camp v. Peetluk*, 585 S.E.2d 704, 708 (Ga. Ct. App. 2003)). However, this is an incomplete quote. The full quote from the case says that "This implied duty [of good faith and fair dealing] requires both parties to a contract to perform their promises and provide such cooperation as is required for the other party's performance." *Camp*, 585 S.E.2d at 708. However, "the covenant cannot breached apart from the contract provision it modifies and therefore cannot provide an independent basis for liability." *Oconee Fed. Savings and Loan Ass'n v. Brown*, 831 S.E.2d 222, 231 (Ga. Ct. Ap. 2019) (citation omitted). Where the associated breach of contract claim fails, so does any allegation that the implied covenant of good faith and fair dealing was breached. *Id.* Thus, the Plaintiff must show a breach of a contractual term before the implied covenant of good faith and fair dealing is of any relevance.

With respect to breach, ARCPE argued that there is no provision in the Prepayment Rider that created a duty upon it to allow the Plaintiff to exercise his right to make a prepayment. *See* [Doc 18-1] at pp. 15-16. Any such duty would have to be implied, and an implication of such a duty is inappropriate here. *Id.* This is

8

because the Prepayment Rider is clearly about the penalty that the Plaintiff must pay if he prepays the loan during a specified time frame. *Id.* In response, the Plaintiff says that such an interpretation of the contract would be improper because it would render meaningless the provision that the Plaintiff has the "right to make payments of principal at any time before they are due." [Doc, 19] at p. 9. However, that is not true, because it would still have meaning. Not all promissory notes allow for prepayment, *see, e.g., Calloway v. Comm'r*, 691 F.3d 1315, 1333 (11th Cir. 2012), so this simply establishes that if the Plaintiff so desires, he could prepay, but would have to pay a penalty to do so.

The Plaintiff further argued that it would be improper for this Court to determine the intent of the contract on a motion to dismiss, but that argument is misplaced. "[W]here the terms of a written contract are plain and unambiguous, a court must confine itself to the four corners of the document to ascertain the parties' intent, and is not permitted to strain the construction of a contract, so as to discover an ambiguity." *Great Water Lanier, LLC v. Summer Crest at Four Seasons on Lanier Homeowners Ass'n, Inc.*, 186, 811 S.E.2d 1, 6 (Ga. Ct. App. 2018). Nobody has claimed any ambiguity in the Prepayment Rider, so discovery, summary judgment, or trial is not necessary to determine intent. ARCPE contends that the intent of the Prepayment Rider is to set forth the penalties that must be paid in the

9

event of a prepayment, this Court should not find an implied duty on ARCPE to help facilitate the prepayment. Count II should be dismissed.

ARCPE argued that even if a duty could be found in the Prepayment Rider, the claim would still fail because the Plaintiff has failed to plead facts showing he was damaged. He only claimed that he was "damaged in an amount to be proved at trial," which has been found in other cases in this Court to be insufficient to state a breach of contract claim. *See* [Doc. 18-1] at pp. 17-18 (citing *Jean-Pierre v. Home Am. Mortg. Inc.,* No. 1:13-CV-1777-ODE-JSA, 2014 WL 12859278, at *5 (N.D. Ga. Mar. 4, 2014)). In response, the Plaintiff claims that he could recover consequential damages or nominal damages, but he never pleaded this in the Amended Complaint. He also says there is a nexus between this claim and the termination of the contract to sell the property, but again, that is not alleged within Count II. The claim fails and should be dismissed.

## C.   THE PLAINTIFF'S GFLA CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS

The Defendants argued that Count III, a claim under the Georgia Fair Lending Act ("GFLA") is barred by the five-year statute of limitations found in O.C.G.A. § 7-6A-7(h). Specifically, the statute says that "[a]n action under this chapter may be brought within five years after the date of the first scheduled payment by the

borrower under the home loan." The loan at issue was originated in 2006, meaning the statute of limitations expired in 2011.

In response, the Plaintiff first claims that O.C.G.A. § 7-6A-7(h) is not a statute of limitations because it uses the word "may" instead of "must" or "shall." *See* [Doc. 19] at p. 11. This argument is unavailing and contrary to the conclusion of every court that has viewed O.C.G.A. § 7-6A-7(h) as a statute of limitation, most notably the Georgia Court of Appeals. In *Oconee Fed. Savings and Loan Ass'n v. Brown*, 831 S.E.2d 222, 232 (Ga. Ct. App. 2019), the statute was referred to as providing "the time period for bringing an action" under the GFLA. *See also Whiddon v. Specialized Loan Servicing LLC*, No. 2:16-CV-00283-RWS-JCF, 2017 WL 11151672, at *5 (N.D. Ga. June 23, 2017), *report and recommendation adopted as modified*, 2017 WL 11151671 (N.D. Ga. Sept. 26, 2017); *Tabb v. Bank of Am., Nat'l Ass'n*, No. 1:12-CV-02574-SCJ-GGB, 2013 WL 12107464, at *2 n.1 (N.D. Ga. Jan. 28, 2013); *Berry v. Beneficial Mortg. Co. of Ga.*, No. 1:10-CV-3259-GET-WEJ, 2011 WL 12828772, at *5 n.9 (N.D. Ga. May 4, 2011), *report and recommendation adopted*, 2011 WL 12828835 (N.D. Ga. June 27, 2011).

"Courts should give a sensible and intelligent effect to every part of a statute and not render any language superfluous." *Berryhill v. Georgia Cmty. Support & Sols., Inc.*, 638 S.E.2d 278, 281 (Ga. 2006) (citations omitted). The entire subsection

11

(h) would be rendered superfluous if it is not read as a statute of limitation. In fact, the entire meaning of subsection (h) is unknown if not a statute of limitation. The Plaintiff has failed to offer any suggestion as to what the subsection means if not a statute of limitation.

The Plaintiff does argue, though, that it is essentially unfair to consider this a statute of limitation, asking the question "what happens in a case like this where a creditor fails to provide the payoff balance after five years from the first payment due date?" [Doc. 19] at p. 12. The answer is easy. What happens is that the GFLA does not provide him with a right of action, and what the Plaintiff may consider to be potentially sloppy drafting of the statute should be addressed with the Georgia General Assembly, not the courts. *See, e.g., Eichhorn, Eichhorn & Link v. Travelers, Ins. Co.*, 896 F. Supp. 812 (N.D. Ind. 1995) ("It may be that sloppy drafting has opened an unintentional loophole in the definition of beneficiary. But that error, if it is an error, is for Congress to rectify."). The Plaintiff's GFLA claim, as the statute is currently written, is barred by the statute of limitation and should be dismissed.

## D.   THE PLAINTIFF HAS FAILED TO STATE A CLAIM FOR BREACH OF CONTRACT IN COUNT IV

Next, the Plaintiff responded to ARCPE's arguments that he failed to state a claim for breach of contract in Count IV. The breach of contract claim is based on the allegations that the Plaintiff supposedly entered into a contract with ARCPE in

2018 to settle his $43,937.00 debt for $20,000.00, and that ARCPE refused to accept this payment as full satisfaction, despite the fact that the Plaintiff never made or attempted to make the payment. *See* [Doc. 17] at ¶¶ 61-73. ARCPE argued that the claim fails because there was no consideration, and even if there was, the allegations only show a unilateral offer by ARCPE without acceptance by the Plaintiff. *See* [Doc. 18-1] at pp. 20-23.

In response, the Plaintiff first claims incorrectly that "Georgia law specifically contemplates that an agreement to satisfy an existing debt with a lesser sum can serve as a valid, binding and enforceable contract." [Doc. 19] at p. 14 (citing O.C.G.A. § 13-4-103). However, this statute provides that "an agreement by a creditor to receive less than the amount of his debt cannot be pleaded as an accord and satisfaction unless it is actually executed by the payment of money, the giving of additional security, the substitute of another debtor, or some other new consideration." O.C.G.A. § 13-4-103(a). As set forth in the Defendants' initial brief, the Plaintiff never paid the money and never gave any new consideration. *See* [Doc. 18-1] at pp. 20-21. The statute is thus of no help to him.

Later in his response, the Plaintiff contends that there was new consideration because in *Codner v. Siegel*, 271 S.E.2d 465 (Ga. 1980), the Georgia Supreme Court held that "[a] promise to pay a debt before it is due in a smaller sum than owed can

be the necessary additional consideration." [Doc. 12] at p. 12 (quoting *Codner*, 271 S.E.2d at 466). The problem with reliance on *Corner*, though, is that it states that "[t]he *execution* of a new agreement may itself amount to a satisfaction if the new promise is founded on a new consideration." 271 S.E.2d at 466 (emphasis added). In the instant case, there was no execution of a new agreement, *see* [Doc. 17] at ¶ 72, and *Codner* makes clear that "[a]n agreement to accept an early payment without a corresponding promise to pay would merely be a unilateral agreement, and without more lacking in consideration." *Id.* at 466 n.1.

This point leads directly into ARCPE's second argument, which was that the offer from ARCPE was a unilateral one that could have only been accepted by the Plaintiff's performance. "A unilateral contract is an offer in writing which makes promises in consideration for acts of performance which are not only the acceptance, but also the consideration flowing to the party making the offer in writing." *Cardin v. Outdoor East*, 481 S.E.2d 872, 873 (Ga. Ct. App. 1997) (collecting cases).

The Plaintiff said in his response that "[a]n offer may be accepted . . . either by a promise to do the thing contemplated therein, or by the actual doing of the thing." [Doc. 19] at p. 15 (quoting *Herring v. Dunning*, 213 Ga. App. 695, 699 (1994)). The Plaintiff tried to use this quote to show that the offer was accepted because the Plaintiff allegedly promised he would pay. *Id.* However, the next

14

sentence in *Herring* says that "[t]he offer must be accepted in the manner specified by it; and if it calls for a promise, then a promise must be made; or if it calls for an act, it can be accepted only by the doing of the act." *Herring*, 213 Ga. App. at 699 (quoting *Sheffield v. Whitfield*, 6 Ga. App. 762, 762, 65 S.E. 807 (1909)). The facts clearly show that ARCPE's offer was a unilateral one that had to have been accepted by performance. The Plaintiff's alleged promise to pay was not an acceptance.

Moreover, in his response, the Plaintiff essentially admitted that it was an offer for a unilateral contract by stating that "[t]he consideration was payment in an immediate lump sum rather than installment payments over time." [Doc. 19] at p. 15. The Plaintiff, however, never made the payment by the due date of December 27, 2018, or at any time. *See* [Doc. 17] at ¶¶ 68-73. If the offer could have been accepted by a promise, that promise would have been consideration, not the payment of money. *See Pabian Outdoor-Aiken, Inc. v. Dockery*, 560 S.E.2d 280, 281 (Ga. Ct. App. 2002) (citation omitted). Thus, there was no consideration exchanged, no acceptance, and no contract.[1]

---

[1] The Plaintiff's contention that a contract was formed which would allow him to satisfy the loan for $20,000.00 is rendered even more implausible by his tortious interference claim. If the Plaintiff is so adamant that the payoff amount was $20,000.00 based on the alleged contract formed in 2018, then there would be no need for him to press BSI for a payoff statement and he would have tried to pay $20,000.00 to satisfy the loan upon a sale of the property.

## **CONCLUSION**

Based on the foregoing, the Defendants respectfully renew their request that this Court grant their Motion to Dismiss the Amended Complaint.

Respectfully submitted, this 28th day of March, 2022.

> */s/ Bret J. Chaness*
> BRET J. CHANESS (GA Bar No. 720572)
> **RUBIN LUBLIN, LLC**
> 3145 Avalon Ridge Place, Suite 100
> Peachtree Corners, GA 30071
> (678) 281-2730 (Telephone)
> (470) 508-9203 (Facsimile)
> bchaness@rlselaw.com
>
> *Attorney for ARCPE Holding, LLC and*
> *Servis One, Inc. d/b/a BSI Financial*
> *Services*

## **<u>FONT CERTIFICATION</u>**

The undersigned counsel hereby certifies that the within and foregoing was

prepared using Times New Roman, 14-point font in accordance with LR 5.1(B).

This 28th day of March, 2022.

/s/ Bret J. Chaness
BRET J. CHANESS (GA Bar No. 720572)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have, this 28th day of March, 2022, filed the within and

foregoing via CM/ECF, which will electronically serve notice on all parties.

> */s/ Bret J. Chaness*
> BRET J. CHANESS (GA Bar No. 720572)