IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KEVIN WASSON,

    Plaintiff,

      v.

ARCPE HOLDING, LLC, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:21-CV-4805-TWT

**OPINION AND ORDER**

This is a breach of contract action. It is before the Court on the Defendants' Motion to Dismiss [Doc. 18]. For the reasons set forth below, the Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.

## I.    Background[1]

This case arises out of a dispute regarding the Plaintiff Kevin Wasson's mortgage loan acquired in 2006 and the subject security deed held by the Defendant ARCPE Holding, LLC ("ARCPE"). (First Am. Compl. ¶¶ 10, 12.) The Defendant Servis One, Inc. d/b/a BSI Financial Services ("BSI") worked as ARCPE's loan servicer for Wasson's mortgage. (*Id.* ¶ 13.) The allegations in the First Amended Complaint arise from two separate episodes in the life of the loan, one occurring in 2018 and the other in 2021.

---

[1] The Court accepts the facts as alleged in the First Amended Complaint as true for purposes of the present motion to dismiss. *See Wildling v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

Regarding the 2018 allegations, Wasson claims that he and ARCPE entered into a contract to settle Wasson's $43,937 loan in exchange for a lump-sum $20,000 payment. (*Id.* ¶¶ 62–65.) On December 12, 2018, ARCPE sent Wasson a letter with an offer to settle the loan, which provided that "Wasson will pay the sum of $20,000.00 on his balance of $98,397.44 on or before December 27, 2018," and that "[u]pon verification of receipt of these funds, [ARCPE] will issue a Satisfaction of Mortgage for the Security Deed." (*Id.* ¶ 63.) Wasson claims that he accepted ARCPE's offer on December 17, 2018, and to "formally memorialize the parties' agreement," he hired a lawyer to prepare a release agreement, which Wasson signed and then sent to ARCPE. (*Id.* ¶¶ 64, 67.) Wasson alleges that ARCPE responded that it would not release Wasson's debt without cleared funds in its office and thus refused to sign the release agreement that Wasson's attorney drafted or accept the $20,000 offer of payment. (*Id.* ¶¶ 69, 72.) Such conduct by ARCPE, Wasson claims, amounted to breach of the settlement agreement. (*Id.* ¶ 73.)

Regarding the 2021 allegations, Wasson claims that ARCPE and BSI (collectively, "Defendants") obstructed the proposed sale of Wasson's property by refusing to provide certain loan information that Wasson needed to move forward with the sale. (*Id.* ¶¶ 15–39.) Specifically, Wasson alleges that BSI, as ARCPE's loan servicer, failed to provide the loan payoff information that Wasson requested and told Wasson various lies to hinder the proposed sale of Wasson's property. (*Id.* ¶¶ 20, 25, 28.) Wasson also claims that he accused

2

ARCPE and BSI employees of being racist and that they harbored animosity toward him because of those allegations. (*Id.* ¶ 29.)

Wasson claims that the Defendants' conduct amounted to tortious interference with contract and that ARCPE's conduct violated a Prepayment Penalty Option Rider provision set forth in the security deed of Wasson's mortgage. (*Id.* ¶¶ 39, 41–54.) The Rider specified that Wasson had "the right to make payments of principal at any time before they [were] due." (*Id.* ¶ 44.) Wasson claims that such language created a duty upon ARCPE to allow him to exercise his right to make prepayments and that ARCPE failed to comply with that duty when it refused to provide the loan information that Wasson requested. (*Id.* ¶¶ 44, 49, 51.) Such conduct on ARCPE's part, Wasson claims, also constituted a violation of ARCPE's implied covenant of good faith and fair dealing under the contract. (*Id.* ¶¶ 47, 52.) Finally, Wasson claims that ARCPE violated its statutory duty under O.C.G.A. § 7-6A-3(4) to provide the loan payoff balances within five business days of his request. (*Id.* ¶¶ 56–60.) Wasson filed this action on November 22, 2021, and the Defendants now move to dismiss all five counts in the First Amended Complaint.

## II.  Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is

3

"improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III.   Discussion

The Defendants move to dismiss the five counts in the First Amended Complaint on various grounds. The Court proceeds by addressing each count of the First Amended Complaint in turn.

#### A. Count I: Tortious Interference with Contract

The Defendants first move to dismiss Wasson's tortious interference with contract claims against ARCPE and BSI. (Br. in Supp. of Defs.' Mot. to Dismiss, at 10.) Under Georgia law, a tortious interference claim requires the

4

following elements:

> (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of a contractual obligation or caused a party or third party to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

*Rowell v. Phoebe Putney Mem'l Hosp., Inc.*, 338 Ga. App. 603, 604 (2016) (citation omitted). The Defendants argue that Wasson cannot state a claim for tortious interference because he fails to show facts substantiating wrongful conduct, lack of privilege, or damages. The Court finds that because both ARCPE and BSI acted with privilege regarding the proposed sale of Wasson's property, Wasson fails to state a claim for tortious interference.

The Defendants argue that Wasson fails to state a claim for tortious interference because both ARCPE and BSI were not strangers to the contract and therefore acted with privilege. (Br. in Supp. of Defs.' Mot. to Dismiss, at 11–13.) Wasson argues, in response, that the Defendants were strangers to the contract because they stood to derive "no direct financial benefit" from the sale of the property. (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 6.)

Under the "stranger doctrine," the Georgia Court of Appeals has established the following:

> Only a stranger to both the contract at issue and the business relationship giving rise to and underpinning the contract may be liable for tortious interference with the contract or the relationship. One is not a stranger to the contract just because one is not a party to the contract. Those who have a direct

5

>  economic interest in or would benefit from a contract with which they are alleged to have interfered (even though not intended third-party beneficiaries of the contract) are not strangers to the contract and cannot have tortiously interfered. Moreover, all parties to an interwoven contractual arrangement are not strangers and therefore not liable for tortious interference with any of the contracts or business relationships.

*Mabra v. SF, Inc.*, 316 Ga. App. 62, 64–65 (2012) (quotation marks, alterations, and citations omitted). The Defendants rely primarily on *Brooks v. Branch Banking & Trust Co.*, 107 F. Supp. 3d 1290 (N.D. Ga. 2015), in support of their claim that they were not strangers to the contract. (Br. in Supp. of Defs.' Mot. to Dismiss, at 12–13.)

In *Brooks*, the plaintiff owned a rental property secured by a mortgage held by the defendant. *Brooks*, 107 F. Supp. 3d at 1294. The security deed to the mortgage contained a family rider provision that absolutely assigned rents and revenues of the property to the defendant until the plaintiff's loan was paid in full. *Id.* at 1301. When the plaintiff fell behind on her mortgage payments and the defendant refused to negotiate a loan modification, the plaintiff eventually sued, alleging intentional interference with contract, among other causes of action. *Id.* at 1294–95. The court held that the plaintiff failed to state a tortious interference claim because the family rider provision established that the defendant was not a stranger to the contract. *Id.* at 1301–02.

The Defendants argue that *Brooks* is analogous to the present case because "ARCPE would have benefitted by being paid the full amount of its loan from the sale proceeds, just as performance of the lease agreements in

*Brooks* would have enabled the bank to obtain the rent money." (Br. in Supp. of Defs.' Mot. to Dismiss, at 12–13.) In response, Wasson argues that the present case is distinguishable from *Brooks* because "there is no document ARCPE can point to in the record to show the sort of contingency interest which existed in *Brooks*." (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 8.)

The Court agrees with the Defendants. ARCPE stood to "benefit from [the] contract with which [it is] alleged to have interfered" because Wasson would have used the proceeds from the sale to pay its loan in full, and therefore, ARCPE cannot plausibly be a stranger to the contract. Further, the Court finds that the "Transfer of the Property" provision within the security deed held by ARCPE is analogous to the family rider provision at issue in *Brooks*. (*See* Br. in Supp. of Defs.' Mot. to Dismiss, Ex. A ¶ 16.) Thus, the Court concludes that ARCPE acted with privilege, and Wasson cannot state a claim for tortious interference against ARCPE.

The Defendants also argue that BSI acted with privilege because it acted within the scope of its duties as ARCPE's agent. (Br. in Supp. of Defs.' Mot. to Dismiss, at 13 (citing *Atlanta Mkt. Ctr. Mgmt., Co. v. McLane*, 269 Ga. 604, 608–09 (1998)).) Wasson incorrectly contends that the Defendants abandoned their argument that BSI was not a stranger to the contract because they limited their argument on this point to just one sentence. (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 6.)

The Georgia Supreme Court in *McLane* did not expressly provide that "agents of non-strangers to a contract are also not strangers," as the Defendants contend. (Br. in Supp. of Defs.' Mot. to Dismiss, at 13.) Nonetheless, the Court finds that such a reading logically extends from the principle that "the defendant must be a stranger to both the contract *and* the business relationship giving rise to and underpinning the contract." *McLane*, 269 Ga. at 609 (citation omitted). Here, like ARCPE, BSI arguably was not a stranger to the contract because, as an agent and payee of ARCPE, it stood to benefit from the contract with which it is alleged to have interfered. As the loan servicer for Wasson's mortgage on the property, BSI certainly was not a stranger to the business relationship giving rise to the contract. Accordingly, the Court concludes that ARCPE and BSI were not strangers to the contract, and Wasson fails to state a claim against both ARCPE and BSI in Count I.[2]

### B. Count II: Breach of Contract Under the Prepayment Penalty Rider

The Defendants move to dismiss Wasson's breach of contract claim against ARCPE under the Prepayment Penalty Option Rider. (Br. in Supp. of Defs.' Mot. to Dismiss, at 10.) Under Georgia law, a breach of contract claim requires that the plaintiff show "(1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken."

---

[2] Having found that ARCPE and BSI were not strangers to the contract, the Court declines to address the issues of whether the Defendants acted wrongfully or whether Wasson adequately pleaded damages in his claim for tortious interference.

8

*SAWS at Seven Hills, LLC v. Forestar Realty, Inc.*, 342 Ga. App. 780, 784 (2017). The issue before the Court at present is whether the security deed to Wasson's mortgage implied a duty on ARCPE to facilitate Wasson's right to make prepayments. (Br. in Supp. of Defs.' Mot. to Dismiss, at 16.)

The Georgia Supreme Court has established the following principles regarding implied duties under a contract:

> In deciding whether to imply promises or duties to the terms of a contract, the introduction of an implied term into the contract of the parties can only be justified when the implied term is not inconsistent with some express term of the contract and where there arises from the language of the contract itself, and the circumstances under which it was entered into, an inference that it is absolutely necessary to introduce the term to effectuate the intention of the parties. Consequently, though courts are generally reluctant to make contracts for the parties, they will imply promises or duties when justice, good faith, or fairness so demand.

*Higginbottom v. Thiele Kaolin Co.*, 251 Ga. 148, 149 (1983) (quotation marks, alteration, and citations omitted).

The Defendants argue that implying a duty on ARCPE to allow Wasson to exercise his right to make prepayments would be inappropriate because such a duty runs contrary to the parties' intent. (Br. in Supp. of Defs.' Mot. to Dismiss, at 16–17 ("The purpose of the Rider is clearly about penalties only, and not about imposing any sort of obligation on ARCPE to help facilitate a prepayment").) Wasson contends, in response, that the Defendants' reliance on *Higginbottom* is misplaced because that case was decided at the summary judgment stage, unlike the motion to dismiss presently before the Court. (Pl.'s

Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 9–10.)

The Court concludes that Wasson has plausibly stated a claim for breach of contract against ARCPE on its implied duty theory. The Court finds nothing suggesting that Wasson's implied term, as alleged, is inconsistent with another express term of the contract. And whether the circumstances under which the contract was entered into give rise to an inference that the implied duty on ARCPE was absolutely necessary to effectuate the intent of the parties is a question of fact appropriate for resolution at a later stage in this litigation.

The Defendants also argue that Wasson has failed to sufficiently plead damages arising from the alleged breach of ARCPE's implied duty. (Br. in Supp. of Defs.' Mot. to Dismiss, at 17.) Specifically, they argue that Wasson's "generic statement" of damages is insufficient to survive a motion to dismiss on the breach of contract claim. (*Id.* at 18 (citing *Jean-Pierre v. Home Am. Mortg., Inc.*, No. 1:13-CV-1777, 2014 WL 12859278, at *5 (N.D. Ga. Mar. 4, 2014)).) In response, Wasson claims he can recover consequential damages in the form of ongoing interest payments, or nominal damages at the very least. (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 10.)

The Court "read[s] the complaint as a whole" and finds that Wasson has plausibly pleaded damages for his breach of contract claim in Count II. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1253 n.11 (11th Cir. 2005). Though Paragraph 54 of the First Amended Complaint generically recites that "Wasson has been damaged in an amount to be proven at trial,"

the allegations of Count I (incorporated in Count II in Paragraph 40) set forth that ARCPE's conduct in the underlying transaction resulted in Wasson losing out on proceeds from the failed sale of his property. (First Am. Compl. ¶¶ 39–40, 54.) And though the Court agrees with the Defendants that Wasson likely will not be entitled to recover the full contract price in damages, (Br. in Supp. of Defs.' Mot. to Dismiss, at 14)—and suspects that Wasson's true damages, if any, are far below the amount-in-controversy threshold—the Court cannot conclude that Wasson's damages as alleged are insufficient as a matter of law.

Having found that Wasson has adequately pleaded its breach of contract claim in Count II under an implied duty theory, the Court also concludes that Wasson appropriately pleaded that ARCPE breached the implied covenant of good faith and fair dealing. *See Camp v. Peetluk*, 262 Ga. App. 345, 350 (2003). Accordingly, the Court concludes that Wasson has stated a claim for breach of contract under its implied duty and duty of good faith theories.

### C. Count III: Violation of O.C.G.A. § 7-6A-3

Next, the Defendants move to dismiss Wasson's claim that ARCPE violated O.C.G.A. § 7-6A-3 on the ground that the claim is barred by the statute of limitations. (Br. in Supp. of Defs.' Mot. to Dismiss, at 18–19.) The Court agrees. *See Whiddon v. Specialized Loan Servicing, LLC*, No. 2:16-CV-0283, 2017 WL 11151671, at *2 (N.D. Ga. Sept. 26, 2017) (finding the plaintiff's claim under the Georgia Fair Lending Act barred by the five-year statute of limitations in O.C.G.A. § 7-6A-7(h)). "An action under this chapter may be

brought within five years after the date of the first scheduled payment by the borrower under the home loan." O.C.G.A. § 7-6A-7. Wasson makes the argument that this does not make a lot of sense in the context of a lender's failure to provide a prompt response to a pay-off request. However, O.C.G.A. §§ 7-6A-3, 4 and 5 prohibit a lot of things in the context of "high-cost home loans." A five-year statute of limitations makes more sense in that broader context. If this is a case of sloppy legislative drafting, it is for the legislature to fix it. Accordingly, Wasson has failed to state a claim against ARCPE in Count III.

### D. Count IV: Breach of Contract Under the Alleged Settlement Agreement

The Defendants move to dismiss Wasson's breach of contract claim in Count IV, which arises from the alleged agreement between ARCPE and Wasson to settle Wasson's loan. (Br. in Supp. of Defs.' Mot. to Dismiss, at 20.) The Defendants first argue that no contract existed because the purported settlement agreement was not supported by consideration. (*Id.*) The Defendants then argue that, even if a contract existed, the facts show that the contract was unilateral and therefore could only be accepted by Wasson's performance through payment. (*Id.* at 21.) Finally, the Defendants argue that Wasson's attempt to have ARCPE sign a release agreement prior to payment constituted a counteroffer that ARCPE never accepted, and thus no breach of contract action may lie. (*Id.* at 22.) In response, Wasson argues that sufficient consideration supported the agreement to settle the loan and that Wasson

12

accepted the bilateral contract by promising to pay. (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 13–16.)

The issues before the Court would make a suitable Contracts exam for a first-year law student. The Court first addresses whether ARCPE's offer letter was unilateral or bilateral, then whether Wasson accepted or counter-offered, and finally whether sufficient consideration supported the purported agreement to settle Wasson's loan.

The Defendants argue that the offer letter was an offer for a unilateral contract that could only be accepted by Wasson's performance—making the $20,000 payment. (Br. in Supp. of Defs.' Mot. to Dismiss, at 21.) Wasson argues that the offer letter presented an offer for a bilateral contract that Wasson accepted by promising to pay the $20,000. (Pl.'s Resp. Br. in Opp'n to Defs.' Mot. to Dismiss, at 15–16.) Under Georgia law, a unilateral contract is "an offer in writing which makes promises in consideration for *acts of performance* which are not only the acceptance, but also the consideration flowing to the party making the offer in writing." *Cardin v. Outdoor E.*, 224 Ga. App. 710, 711 (1997) (emphasis added). In contrast, a bilateral contract is "one in which there are *mutual promises* between two parties to the contract." Restatement (First) of Contracts § 12 (1932) (emphasis added); *see also Herring v. Dunning*, 213 Ga. App. 695, 699 (1994) ("An offer may be accepted . . . either by a promise to do the thing contemplated therein, or by the actual doing of the thing. The offer must be accepted in the manner specified by it; and if it calls for a promise,

13

then a promise must be made; or if it calls for an act, it can be accepted only by the doing of the act." (citation omitted)).

The issue here is whether the terms of ARCPE's offer letter create a unilateral or bilateral contract as a matter of law. The letter reads as follows:

> This letter shall serve as to the terms to release the Security Deed of Trust or Mortgage mentioned above.
>
> Mr. Wasson will pay the sum of $20,000.00 on his balance of $98,397.44 on or before December 27, 2018. Payment must be made via wire transfer, payable to ARCPE Holding, LLC. Please find enclosed our wire instructions.
>
> Upon verification of receipt of these funds, we will issue a Satisfaction of Mortgage for the Security Deed dated 11/28/2006, executed by DHI Mortgage Company, LTD, recorded in the Official Records of Fulton County, State of Georgia for the amount of $43,937.00, Book 44063, Page 132.
>
> This offer will remain valid and binding on ARCPE Holding, LLC until December 27, 2018. Thereafter the settlement terms will become null and void and the full balance due, noted herein above will become due and payable.

(First Am. Compl., Ex. C.) The offer letter contemplated that "Wasson will pay the sum of $20,000.00 . . . on or before December 27, 2018," and that "[u]pon verification of receipt of these funds, [ARCPE] will issue a Satisfaction of Mortgage for the Security Deed." *Id.* The Court finds that this language created an offer for a unilateral contract that permitted acceptance only through Wasson's payment of the $20,000. Notably, the letter affirmatively required that "Wasson *will* pay the sum of $20,000"; it did not state that a promise to pay the $20,000 would constitute acceptance. Thus, Wasson's allegations that

14

he accepted ARCPE's offer but never remitted the $20,000 preclude the Court's finding, as a matter of law, that Wasson has adequately pleaded acceptance of the settlement agreement. (First Am. Compl. ¶¶ 64, 68–73.) Accordingly, because the Court finds that the offer letter was an offer for a unilateral contract and that Wasson failed to perform by making the $20,000 payment, ARCPE and Wasson had no binding settlement agreement upon which Wasson could plausibly state a claim for breach of contract in Count IV.

The language in the third paragraph of the offer letter supports the Court's conclusion here. That paragraph indicates that after Wasson remitted the $20,000, ARCPE would issue a satisfaction of Wasson's mortgage for the security deed. (First Am. Compl., Ex. C.) Thus, the offer required that Wasson make payment prior to any release of Wasson's debt and, therefore, Wasson's request that ARCPE sign the release agreement drafted by his attorney prior to his making payment clearly operated as a counteroffer rather than an acceptance.[3] *See Bennett v. Novas*, 364 Ga. App. 364, 366 (2022) ("An answer to an offer will not amount to an acceptance, so as to result in a contract, unless it is unconditional and identical with the terms of the offer. *To constitute a contract, the offer must be accepted unequivocally and without variance of any sort.*" (citation omitted)); *Pritchard v. Mendoza*, 357 Ga. App. 283, 288 (2020)

---

[3] Having found that ARCPE's offer was unilateral and that Wasson failed to accept by making the $20,000 payment, the Court declines to address the issue of whether Wasson's promise to pay was adequate consideration to support the alleged settlement agreement.

15

("A purported acceptance of an offer that varies even one term of the original offer is a counteroffer." (citation omitted)); *Smith v. Owens*, 848 F.3d 975, 978 n.5 (11th Cir. 2017) ("An unaccepted settlement offer—like any unaccepted contract offer—is a legal nullity, with no operative effect. . . . [T]he recipient's rejection of an offer leaves the matter as if no offer had ever been made." (citation omitted)). Thus, Wasson has failed to state a claim for breach of contract under the alleged settlement agreement in Count IV.

### E. Count V: Attorneys' Fees and Litigation Expenses

Finally, the Defendants argue that Wasson cannot recover attorneys' fees and litigation expenses because none of his underlying claims have merit. (Br. in Supp. of Defs.' Mot. to Dismiss, at 23.) Having found that Wasson adequately stated a claim for breach of contract under an implied duty theory in Count II, the Court finds that Wasson may plead attorneys' fees and litigation expenses. *See Forsyth Cnty. v. Martin*, 279 Ga. 215, 219 (2005) ("Questions concerning bad faith, stubborn litigiousness, and unnecessary trouble and expense under O.C.G.A. § 13-6-11 are generally questions for the jury to decide.").

### IV.   Conclusion

For the foregoing reasons, the Defendants' Motion to Dismiss [Doc. 18] is GRANTED IN PART and DENIED IN PART. It is GRANTED as to Counts I, III, and IV of the First Amended Complaint. It is DENIED as to Counts II and V of the First Amended Complaint.

SO ORDERED, this   11th   day of October, 2022.

*/s/ Thomas W. Thrash*
THOMAS W. THRASH, JR.
United States District Judge